### KELLY *v.* LAING.

1. MUNICIPAL CORPORATIONS — STATUTES — CONSTRUCTION — AMEND-
MENT OF CHARTER.

    Statute providing for amendment of city charter should not be
so construed as to render charter unworkable, seriously impair
conduct of municipal business, or result in absurdity in gov-
ernment, if another construction is fairly possible (1 Comp.
Laws 1929, §§ 2257–2261).

2. SAME—PROPOSALS TREATED AS ONE AMENDMENT.

    To carry out intention of legislature and avoid absurdity of re-
sult in amending city charter, all proposals pertaining to same
subject and directed to same purpose must necessarily be
treated as one amendment, although they contemplate change
of more than one section (1 Comp. Laws 1929, §§ 2257–2261).

3. SAME—PROPER FORM OF PROPOSAL OF AMENDMENT—DUTY TO PRO-
VIDE FOR ELECTION.

    Petition for amendment of city charter which provides for sepa-
rate vote on each of 13 sections, making it possible to approve
some and reject others, which might render charter unwork-
able, is not in proper form, and raised no duty in city officials
to provide for election thereon (1 Comp. Laws 1929, §§ 2257–
2261).

4. SAME—REVISION OR AMENDMENT OF CHARTER MAY BE PROPOSED
BY ELECTORS.

    Under 1 Comp. Laws 1929, §§ 2254, 2257, either revision or
amendment of city charter may be initiated by petition of
electors.

5. SAME—REVISION AND AMENDMENT DISTINGUISHED.

    Revision of city charter implies re-examination of whole law and
redraft without obligation to maintain form, scheme, or struc-
ture of old, while amendment implies continuance of general
plan and purport of law with corrections to better accomplish
its purpose.

As to avoidance of absurdity in construction of statute, see anno-
tation in 5 L. R. A. 343.

6. SAME—CHANGE IN FORM OF GOVERNMENT REQUIRES REVISION OF CHARTER.

Change in form of government of home-rule city may be made only by revision of charter and not by amendment (1 Comp. Laws 1929, §§ 2254–2257).

7. SAME—INCREASING NUMBER OF COMMISSIONERS INVOLVES AMENDMENT ONLY.

Proposal to increase number of city commissioners, with machinery necessary therefor, proposes amendment of charter and not revision (1 Comp. Laws 1929, §§ 2254, 2257).

8. SAME—ABOLISHING OFFICE OF CITY MANAGER INVOLVES REVISION OF CHARTER.

Proposal in petition for amendment of city charter to abolish office of city manager and vest his powers and duties in city commission, is, in effect, proposal for revision of charter and must be had by method provided by statute for revision (1 Comp. Laws 1929, §§ 2254–2257).

Appeal from Bay; Browne (Clarence M.), J., presiding. Submitted March 15, 1932. (Calendar No. 36,423.) Decided June 6, 1932.

Mandamus by William J. Kelly against Garrie C. Laing, city clerk of Bay City, and others to provide for an election to vote upon amendments to the city charter. Writ granted. Defendants appeal. Reversed, and writ set aside.

*Charles A. Higgs* (*G. C. Leibrand,* of counsel), for plaintiff.

*A. H. McMillan,* for defendants.

*Ganson Taggart,* City Attorney of Grand Rapids, *John W. Patchin,* City Attorney of Traverse City, and *Fremont Evans,* City Attorney of St. Joseph, *amici curiæ.*

FEAD, J. This is review of judgment ordering writ of mandamus to compel defendants to provide for an election to vote upon 13 sections of ''amend-

ments" to the charter of the city of Bay City, proposed by initiative petition of electors.

The charter was adopted under the home-rule act (1 Comp. Laws 1929, § 2228 *et seq.*). It provides for a city commission of five persons, elected from districts, and a mayor without power of veto. It also requires the appointment of a city manager, whose powers and duties are defined or mentioned in some 67 places of the charter and who is an executive officer of the city.

Ten of the proposed amendments provide for abolishing the districts, for increase of the commission to nine members, to be elected from wards, and for conferring power of veto on the mayor. Another is to abolish the office of city manager and vest his powers and duties in the city commission, with "power to delegate such of said powers and duties to other city officers as the said commission shall by ordinance provide." Another is to prohibit city officers or employees from being interested in city contracts and to require public bids on certain expenditures. Another is to prohibit diversion of water and light revenues and to provide for service at cost.

The first question is whether the petition is in form to require submission of the proposed amendments to the electors.

Under 1 Comp. Laws 1929, § 2257, which provides that the initiatory petition may set up the form in which proposed amendments shall be submitted on the ballot, the petition provides for separate vote on each of the 13 sections. This would make it possible for the electors to approve some and reject others of the sections pertaining to the increase of the number of commissioners. A certain combination of approvals and rejections would render the

charter unworkable. For example, if the electors should approve the abolishing of districts and reject increase of the number of commissioners, the territory from which the five commissioners are to be elected would not be stated in the charter. Other combinations would seriously impair the conduct of municipal business, certainly be productive of litigation or result in absurdity in government. A statute should not be construed to produce such results if another construction is fairly possible.

An amendment may be to the charter, to a subject of it, or to a specific section, by alteration, subtraction, or addition. It was the intention of the legislature to provide for orderly change of the charter, not to encourage or sanction confusion in city government. To carry out its intention and to avoid absurdity of result, it is necessary that all proposals pertaining to the same subject and directed to the same purpose be treated as one amendment, as they are in fact, and be voted on as such, although they contemplate change of more than one section. See *State* v. *City of Portland,* 65 Ore. 273 (133 Pac. 62).

1 Comp. Laws 1929, §§ 2257–2261, inclusive, in providing for submitting and adopting an amendment to the charter, use the word "amendment" in the singular. Section 2261 provides that other proposals, whether initiated by petition or proposed by the legislative body of the city, may be submitted at the same election. The consistent use of the singular demonstrates that it was deliberate on the part of the legislature and precludes the joining of two or more unrelated amendments in the same petition. It was evidently the intention of the legislature to insure the considered action of the electors on each separate proposal and not to permit the securing

of signatures through the trick of combining different proposals in the same petition.

We hold that the petition may embrace only one proposed amendment, to be so voted upon, although it may consist of more than one section, if all sections are germane to the purpose of the amendment. The petition on its face is not in the form required by law, and raised no duty in defendants to provide for an election.

Counsel discuss at length another question, upon which attorneys of other cities have filed a brief *amici curiæ* because of its public interest. Counsel disagree upon whether it is proper for present consideration or should be raised by *quo warranto* after the election. The determination of the question is more important than decision of the matter of procedure, and, as it will enable electors to take proper steps to change charters and probably save further litigation, we are moved to consider it.

The question is whether the changes of the nature here proposed may be made by amendment to the charter or only by revision. 1 Comp. Laws 1929, § 2254, provides:

"Any city desiring to revise its charter shall do so in the following manner."

1 Comp. Laws 1929, § 2257, provides:

"Any existing city charter  *  *  *  may from time to time be amended in the manner following."

Either revision or amendment may be initiated by petition of electors. On amendment, the proposal is submitted at the election in the form set up in the petition, if it sets up a form. The sections of the statute pertaining to amendment of a charter adopted under the home-rule act contain no express language indicating that a change in the form of government may be so made. On revision, the

charter is prepared by a charter commission elected by the people, and submitted to the electors. At the initial election to determine whether the charter shall be revised, the legislative body of the city or the initiative petitions "may provide for the submission with such question for an advisory vote the question of a change in the form of government of such city." 1 Comp. Laws 1929, § 2254. Thus, the statute rather clearly points out revision of the charter as the method of changing the form of government, and, moreover, by providing for an advisory rather than a mandatory vote, that the final determination of such change is committed to a charter commission, subject to later approval of the electors.

"Revision" and "amendment" have the common characteristics of working changes in the charter and are sometimes used inexactly, but there is an essential difference between them. Revision implies a re-examination of the whole law and a redraft without obligation to maintain the form, scheme, or structure of the old. As applied to fundamental law, such as a constitution or charter, it suggests a convention to examine the whole subject and to prepare and submit a new instrument, whether the desired changes from the old be few or many. Amendment implies continuance of the general plan and purport of the law, with corrections to better accomplish its purpose. Basically, revision suggests fundamental change, while amendment is a correction of detail.

"Revision. The act of re-examination to correct, review, alter or amend; review, re-examination, looking at again." 54 C. J. p. 771.

"The term 'amendment' implies such addition to or change within the lines of the original instru-

ment as will effect an improvement, or better carry out the purpose for which it was framed." 25 R. C. L. p. 904.

See, also, *Livermore* v. *Waite*, 102 Cal. 113 (36 Pac. 424, 25 L. R. A. 312); *People* v. *Stimer*, 248 Mich. 272, 287 (67 A. L. R. 552).

In *Denver* v. *New York Trust Co.*, 229 U. S. 123, 143 (33 Sup. Ct. 657), upon the claim that a proposed charter amendment in regard to the acquisition of a municipal water plant was a revision of the charter, the court said:

"The section is in form and in substance a mere amendment. It does not alter the form of the city government or make extensive changes in the existing charter, but is confined to matters pertaining to public utilities, more especially the acquisition, maintenance and operation of a municipal water plant."

In *State, ex rel. Miller,* v. *Taylor,* 22 N. D. 362 (133 N. W. 1046), the Constitution provided for two State normal schools, and that no other institution of like character should be established without a revision of the Constitution. In holding that other schools could be established without revision, the court said:

"An examination of the Constitution and of this change in article 19 can lead to but one conclusion, and that is that in its essential elements the addition of one normal school to the public institutions enumerated is, as the word 'amendment' is understood popularly, and even generally understood in a legal sense, an amendment; that it calls for and necessitates no general review of the Constitution. It is unrelated to any other subject or article in the Constitution. No other paragraph is affected by the change, and its relation to the whole Constitution,

and to each of its parts, is such that we cannot assume that a review of a single remaining paragraph of the Constitution would be considered by anyone as necessary in connection with the increase of the number of public institutions to the extent attempted.''

In *State* v. *City of Portland, supra,* upon a group of amendments to change the form of government from the common council to the commission system, the court, in holding they should be submitted as one amendment, said:

''The amendments amount to a general revision of the city charter, and are all germane to the general purpose sought to be accomplished.''

In *People, ex rel. Moore,* v. *Perkins,* 56 Col. 17 (137 Pac. 55, Ann. Cas. 1914D, 1154), by a divided court, it was held that proposals to alter the city charter to change the government from the common council to the commission form may be done by amendment. The case did not involve the distinction between revision and amendment as a method of changing the charter, but rested upon the language of the Constitution. The majority of the court stated the issue to be ''whether these two amendments constitute a new charter or whether they are in fact amendments to the existing charter.'' They held the proposals did not set up a complete ''new charter,'' that the word ''amendment'' as used in the Constitution was intended to be unqualified and unlimited in its scope, and said:

''It is true that the amendments are, in a way, a departure from the system heretofore provided for the management of the municipality. In this respect, they are different and are new, so far as the number of officials is concerned; but, regardless of this they are germane to the subject of municipal

government, that is the only proper subject embodied in the charter, and they pertain to and affect this subject, each covering a separate and distinct branch thereof.   *   *   *

"The amendments include such additional changes within the lines of the subject covered by the original instrument, viz., local self-government, as are thought will improve or better carry out the purposes for which it was framed."

Two justices dissented, saying:

"While the so-called amendments are germane to municipal government, they are in no sense germane to, nor *within the lines* of the existing charter. On the contrary, they destroy each and every of the fundamental principles thereof; wipe out, as an entirety, the existing frame of government and substitute therefor another radically different in every substantial respect. The provisions of the existing charter which remain unaffected do not constitute the frame or form of government in any respect. They would necessarily be a part of any charter framed with due regard to the rights of the public. Provisions which would be proper in *any* charter are not the distinguishing features of government, and, therefore, cannot be employed as a criterion in determining whether a proposed change is in reality a new charter or an amendment to an existing charter. The distinguishing feature of a charter of a municipality, or of the organic law of a State, is essentially the form and frame of government prescribed therein.   *   *   *

"Now, the charter of the city and county of Denver is the organic law thereof, and constitutes the instrument that may be amended. That charter, therefore, is the subject of legislation, and a 'charter amendment' to it, therefore, to be proper, must be germane to *the* plan or scheme of government therein prescribed. And herein, to my mind, the ma-

jority opinion is most unsound, contrary to authority and far-reaching in its evil effect. It declares, substantially, that any proposed change in the organic law of the municipality which is germane to *any* plan or scheme of municipal government, constitutes a proposed amendment, and, hence, that by an 'amendment,' an existing plan of government may be replaced by another entirely different. If this be true there can be no distinction between a 'new charter' and an 'amendment' of an existing charter, and the constitutional provisions prescribing a separate mode of procedure in the enactment of each are coalesced. If any measure germane to the subject of municipal government may be properly classed as an amendment to *any* charter for municipal government, as held in the majority opinion, then an 'entire charter' is only an amendment, for it relates to municipal government.''

See, also, *Speer* v. *People,* 52 Col. 325 (122 Pac. 768).

The reasoning of the dissenting opinion seems to us the better, especially as applied to a case where the statute draws a distinction between revision and amendment as a method of altering a charter and confines each to its own sphere. It is a specific instrument, the charter, as to which the change must be "within the lines" in order to constitute an amendment, not the general "subject of municipal government" or "local self-government." The latter, however, is a proper and principal consideration on revision.

There is reason in the distinction made by the legislature. An amendment is usually proposed by persons interested in a specific change and little concerned with its effect upon other provisions of the charter. The machinery of revision is in line with our historical and traditional system of changing

fundamental law by convention, which experience has shown best adapted to make necessary readjustments.

From the express implication arising from an advisory vote in proceedings for revision, from the difference in method providing for difference in character of changes, and from the proper meaning of the words used, we are of the opinion that the statute must be construed to require that a change in the form of government of a home-rule city may be made only by revision of the charter.

Speaking generally and without stopping to examine the precise effect of those at bar, it is evident that a proposal to increase the number of commissioners from five to nine, with the machinery necessary therefor, would be merely a change of detail and, therefore, an amendment. *Sprister* v. *City of Sturgis,* 242 Mich. 68. A change of powers might or might not require revision according to its nature and effect upon the charter as a whole. It is not contended that the proposals regarding city contracts and expenditures and diversion of revenues are not proper amendments.

The city manager, while holding office at the pleasure of the commission, is not a mere hired man. The charter constitutes him an executive officer of the city. His charter powers and duties extend to most departments of city affairs and he has superintendence of or part in most municipal activities. In some matters, his finding, or report is provided as a basis or a requisite to governmental action by the commission. His office is an integral part of the form of government, and to abolish and transfer his duties and powers to the commission would result in a substantial change of such form.

The proposal to abolish the office does not contemplate a change confined to specific sections or arti-

cles of the charter, but it roams through the whole of the instrument. The charter contains 203 sections, of which, of course, most are devoted to the powers and machinery of municipal operation common to charters generally. By counsel's count, the city manager is mentioned in 67 places, and the proposed amendment would affect directly or by implication 52 sections of the charter. It would be impossible to ascertain the effect of the proposal without a minute examination of all portions of the charter devoted to the form of government and the exercise of powers and to most of the provisions for the operation of city affairs. To produce an orderly charter such as the legislature intended, the extent of the changes as well as their character, necessary to provide transfer of powers of the city manager to other officers, undoubtedly would require a revision.

The difference between statutory revision and amendment could hardly be better illustrated than by the proposal at bar. It provides for vesting the powers and duties of the city manager in the city commission, with authority to delegate them to certain city officers. Such delegation would be necessary because certain powers and duties are individual and cannot be exercised by a board. Some of them must be exercised in certain matters before the commission can act. To make the proper delegation, the city commission would need to make the same examination of the whole charter and distribution of powers and duties as would a charter commission, in order to render the government effective and prevent chaos. In other words, the proposal is in fact for revision of the charter by the city commission instead of by the body authorized by statute.

Both from the number of changes in the charter and the result upon the form of government, the pro-

posal to abolish the office of city manager requires revision of the charter and must be had by the method the statute provides therefor.

Judgment is reversed, and writ set aside, but without costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, and BUTZEL, JJ., concurred with FEAD, J. WIEST, J., concurred in the result.