Belknap
No. 90-353

DAVID R. ALBERT & a.

v.

CITY OF LACONIA

June 12, 1991

*Sulloway Hollis & Soden,* of Laconia (*John P. Chandler* on the brief and orally), for the plaintiffs.

*Burke & Baillargeon,* of Gilford (*James L. Burke* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiffs, nineteen Laconia voters, challenge the Superior Court's (*McHugh,* J.) order upholding the validity of procedures used by the city of Laconia in amending its municipal charter.

On appeal the plaintiffs argue that, when the defendant amended its municipal charter, it violated New Hampshire's "home rule" statute, RSA chapter 49-B (Supp. 1990), in two ways. First, they assert that the changes to the city charter were of such a fundamental and broad nature that the city should have followed the charter *revision* procedures under RSA 49-B:3 and :4 (Supp. 1990), instead of the charter *amendment* procedures under RSA 49-B:5 (Supp. 1990). Second, they argue that, even if it was correct to use the amendment procedures, the city failed to comply with the statute in presenting a referendum question which violated the "single subject" requirement of RSA 49-B:5, II(a) (Supp. 1990). For the reasons set forth below, we affirm.

The facts as presented to the trial court are as follows. Since 1970, the Laconia City Council has consisted of nine councilors, six of whom were elected from each of the city's wards and three of whom were elected city-wide, or "at-large." Beginning in 1987, the position of Mayor was filled by the councilor "at-large" who received the most votes. In the summer of 1989, after having collected the signatures required by RSA 49-B:5, II (Supp. 1990), a group of Laconia citizens successfully petitioned the Laconia City Council to include a referendum question on the November 1989, city-wide ballot which sought approval of several changes in Laconia's city charter.

The referendum question and explanation, as presented on the ballot to the Laconia voters, was as follows:

> "Shall the municipality approve a charter amendment to Sections 3.01 and 3.08, to the City Charter, as summarized below:
>
> The governing body of the city shall be an elected city council headed by a mayor who will be elected at large, by popular vote.
>
> The council shall be composed of ward councilors, one elected from each of the city wards.
>
> The elected mayor shall have the power to vote only in the event of a tie vote among the councilors.
>
> At its first meeting, the council shall elect one of its own members to act as mayor pro tem. The mayor pro tem shall at all times retain his authority to vote as his ward's councilor.
>
> ### EFFECT OF CHANGE
>
> This change eliminates three at-large council seats and provides for one councilor from each ward and an at-large

mayor who has authority to vote only in the event of a tie vote by the council. Under the current charter, the mayor is the at-large councilor receiving the highest number of votes.

It provides that at its first meeting, the council shall elect one of its own members to act as mayor pro tem and that he shall at all times retain his authority to vote as his ward's councilor. Under the present charter, the mayor pro tem is the at-large candidate receiving the second highest number of votes.

This change leaves the City Council/City Manager form of government unchanged. Except for voting power of the mayor, the duties of the council, mayor and city manager remain as provided for, in the current charter."

On a vote of 2,134 in favor and 1,241 against, the proposed amendments were approved. The plaintiffs then petitioned the superior court to review the validity of the procedures used by the city in placing the referendum question on the ballot. *See* RSA 49-B:10 (Supp. 1990). After an evidentiary hearing, the trial court made findings of fact and ruled that the amendments were validly enacted. It is from this ruling that the plaintiffs now appeal.

RSA chapter 49-B (Supp. 1990), New Hampshire's "home rule" statute, provides two means by which a municipality, such as Laconia, can make changes to its charter: "revision", *see* RSA 49-B:3 and :4 (Supp. 1990), and "amendment," *see* RSA 49-B:5 (Supp. 1990). The initial question on appeal is whether the changes presented to Laconia voters on the November ballot were properly treated as an amendment, rather than as a revision, to the charter.

Although neither "amendment" nor "revision" is defined by the statute, an examination of the procedures required for accomplishing each provides some guidance as to their respective meanings and purposes. Both charter amendment and revision may be initiated by voter petition presented to the municipal officers. *See* RSA 49-B:3, II, :5, II (Supp. 1990). If the petition calls for an amendment, the petition form must set out the specific terms of the amendment. RSA 49-B:5, III (Supp. 1990). If the form is deemed sufficient, a public hearing is held on the proposed amendment and then the amendment is "submitted to the voters at the next regular municipal election. . . ." *Id.* at IV(c) (Supp. 1990).

A proposed charter revision, on the other hand, is neither as specific, nor as expeditiously handled, as a proposed amendment. A voter's petition for a charter revision requests that "a charter com-

mission for the purpose of revising the municipal charter . . ." be established. RSA 49-B:3, III(b)(1) (Supp. 1990). No specific proposed charter revision is placed in the petition. If the revision petition is deemed sufficient, the only question placed on the ballot is: "Shall a charter commission be established for the purpose of revising the municipal charter. . . ." *Id.* at V. Any specific changes to the charter are then proposed by the charter commission, but only after extensive public consideration and upon the submission of both a preliminary and a final report by the commission on its proposed changes. RSA 49-B:4, V (Supp. 1990). The legislature clearly anticipated that the charter commission process not only would be lengthy but would place a significant demand upon city resources in order to accomplish the commission's goals. *See* RSA 49-B:4 (Supp. 1990).

■ Thus, from the foregoing, it is clear that the amendment process is directed toward specific changes to a city charter, whereas the revision process is less specific and contemplates the possible need for a general, more fundamental, change in a city's governmental structure. In a case interpreting a "home rule" statute similar to that found in New Hampshire, the Michigan Supreme Court aptly explained the difference as follows:

> "'Revision' and 'amendment' have the common characteristics of working changes in the charter, and are sometimes used inexactly, but there is an essential difference between them. Revision implies a re-examination of the whole law and a redraft without obligation to maintain the form, scheme, or structure of the old. As applied to fundamental law, such as a constitution or charter, it suggests a convention to examine the whole subject and to prepare and submit a new instrument, whether the desired changes from the old be few or many. Amendment implies continuance of the general plan and purport of the law, with corrections to better accomplish its purpose. Basically, revision suggests fundamental change, while amendment is a correction of detail."

*Kelly v. Laing,* 259 Mich. 212, 217, 242 N.W. 891, 892 (1932).

■ The plaintiffs characterize the changes made to Laconia's charter as "too broad and fundamental" for the amendment process. We agree that the changes are significant, but they are not of such a fundamental nature as to require a "convention to examine the whole subject" and form of Laconia's city government. Where, as here, a group of citizens seek to make specific changes to the council ele-

ment of their council-city manager form of government, they should not be required to seek, nor should a city be burdened with, establishment of a charter commission, whose broad powers allow for a re-examination of the very nature of their city government. Accordingly, the city of Laconia appropriately used the amendment procedures under RSA 49-B:5 (Supp. 1990) in enacting the changes to its charter.

Alternatively, the plaintiffs also argue that if the city was correct in using the amendment procedures, it violated those procedures by failing to comply with the statute's "single subject" limitation. RSA 49-B:5, II(a) (Supp. 1990) states that "[e]ach amendment shall be limited to a single subject but more than one section of the charter may be amended as long as it is germane to that subject." The plaintiffs contend that the single amendment presented to the Laconia voters covered four separate subjects; namely, (1) a reduction in the size of the city council, (2) an elimination of the councilor seats elected "at large", (3) a change in the election process for mayor, and (4) a reduction in the Mayor's power to vote on the council.

Although we have never addressed the statute's "single subject" limitation, other jurisdictions have interpreted similar provisions. Over a century ago, in *State ex. rel. Hudd v. Timme, Secretary of State*, 54 Wis. 318, 11 N.W. 785 (1882), the Supreme Court of Wisconsin was asked to interpret a section of its State Constitution requiring that any change to the constitution be in the form of a single amendment. *Id.* at 332–33, 11 N.W. at 789. At issue in that case were several proposals, presented in a single constitutional amendment, for changing annual legislative sessions to biennial sessions. The single amendment presented for the electors' consideration included increasing compensation for State legislators, altering the method for and time of State legislative elections, and changing the tenure of office of State senators. *Id.* at 326, 11 N.W. at 786.

In addressing the assertion that the changes violated Wisconsin's single amendment requirement, the court concluded that such an interpretation of the requirement would "render it practically impossible to amend the constitution." *Id.* at 335, 11 N.W. at 790. The court then stated as follows:

> "We think amendments to the constitution . . . must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other."

*Id.* at 336, 11 N.W. at 791; *see also Kerby v. Luhrs,* 44 Ariz. 208, 221, 36 P.2d 549, 554 (1934); *Moore v. Shanahan,* 207 Kan. 645, 657, 486 P.2d 506, 516–17 (1971); *Laing,* 259 Mich. at 215–16, 242 N.W. at 892. In applying this test, the Wisconsin court held that the several changes included within the amendment were aimed at the achievement of a single purpose, changing the frequency of legislative sessions, and that, therefore, presenting them in a single amendment did not violate Wisconsin's constitution.

■ Although the court in *Timme* was addressing a *constitutional,* rather than a statutory, prohibition against multiple changes within a single amendment, we find the court's reasoning persuasive. In enacting the "home rule" statute, the New Hampshire Legislature clearly intended to provide a mechanism for the orderly development and growth of municipal governments within New Hampshire. *See* RSA 49-B:1 (Supp. 1990). In furtherance of this goal, RSA 49-B:5, II(a) (Supp. 1990) requires that amendments be limited to a "single subject," but it also recognizes that a single subject may require changes to different parts of the charter in order to accomplish an amendment's purpose or goal.

■ In the present case, a group of Laconia citizens sought an amendment addressing a single concern: reduction in the number and voting power of the "at-large" elected councilor seats, which, in turn, would vest greater voting power in the city's ward councilors. The ballot referendum on the amendment made this clear, as did the public debate and local media coverage on the proposed amendment. In order to achieve this goal, the petitioners for the amendment sought the four changes to the charter included on the ballot. Although these changes affected different aspects of the city council's structure, they were all necessary for accomplishing the amendment's single and clearly stated goal. As the court noted in *Timme,* were we to accept the plaintiffs' interpretation of the "single subject" requirement, we "would compel the submission of an amendment which, although having but one object in view might consist of considerable detail, [thus requiring] separate provision[s], . . . in such form that a defeat of one of its important matters of detail might destroy the usefulness of all the other provisions when adopted." *Id.* at 335, 11 N.W. at 790. Thus, we conclude that the city of Laconia did not violate the "single subject" requirement under RSA 49-B:5, II(a) (Supp. 1990) when it presented these changes as one amendment to the city charter.

*Affirmed.*

All concurred.