Merrimack
No. 2000-020

# GERALD HANDLEY

v.

# TOWN OF HOOKSETT

November 14, 2001

*Boutin & Associates, PLLC*, of Londonderry (*Brenda E. Keith* and *Edmund J. Boutin* on the brief, and *Mr. Boutin* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Lauren S. Irwin* and *Barton L. Mayer* on the brief, and *Mr. Mayer* orally), for the defendant.

BRODERICK, J. The plaintiff, Gerald Handley, appeals an order of the Superior Court (*McGuire*, J.) holding that RSA 675:5 (1996) does not require towns to determine the validity of a protest petition prior to the vote on a warrant article and that the defendant, Town of Hooksett (town), had not impermissibly combined multiple amendments to its zoning ordinance into a single ballot question. We affirm.

The record supports the following facts. On January 20, 1999, the town posted the warrant for its annual meeting. Among the questions to be voted on was Warrant Article 2, Amendment 4 (ballot question), which sought to alter both the square footage and frontage requirements for lots in medium- and high-density residential districts. The plaintiff and others filed a timely protest petition, which, if signed by the owners of twenty percent of the area of the lots affected by the ballot question, would have increased the vote needed to pass it to a two-thirds majority. *See* RSA 675:5, I-a(a).

As required by RSA 675:5, II(b), the town clerk posted the following notice at the polling place after receiving the protest petition:

> As a result of the receipt of this protest petition, a two-thirds vote of the town meeting may be required to pass the zoning amendment.

In addition, as required by statute, the moderator announced at the opening of the polls that a protest petition had been received. The validity of the petition, however, was not determined by town officials until after the voting was completed.

At the close of the polls, the official tabulation revealed a total of 718 votes cast with 463 in favor of the ballot question and 255 opposed. In the event a two-thirds majority was ultimately required, the ballot question would have needed to receive 479 votes. After a recount, the results were modified. The revised election results revealed that 722 votes were cast, with 465 in favor of the ballot question and 257 opposed. Based upon the revised tabulations, a two-thirds majority would have required 481 votes. Prior to the recount, but one day after the election, the town administrator announced at a meeting of town council (council) that an examination of the protest petition had begun. The pre-recount results of the balloting were published at the same meeting.

Less than ten days later, the town administrator prepared a memorandum for the council stating that the acreage owned by the signatories to the protest petition represented only fourteen percent of the total acreage affected by the ballot question, less than the statutorily required minimum of twenty percent. *See* RSA 675:5, I-a(a). Five days

later, upon the recommendation of the town administrator, the council declared the protest petition invalid. Because the petition was invalid, the ballot question passed by a simple majority vote. *See* RSA 675:3, I (Supp. 2000). Pursuant to RSA 677:2 (Supp. 2000), the plaintiff filed a motion for rehearing with the council, which was denied.

The plaintiff appealed to the superior court, arguing that the council was obligated to determine the validity of the protest petition before voting on the warrant began. During the hearing of his appeal, the plaintiff also contended that the town impermissibly combined six separate zoning amendments — relating to the square footage and frontage requirements in the affected districts — into a single ballot question. The plaintiff asserted that the six amendments should have been separate ballot questions or, at the least, grouped into two questions representing amendments to the medium- and high-density residential districts.

The trial court ruled that although RSA 675:5 requires that the council decide the validity of a timely-filed protest petition, neither the statute nor applicable case law dictates when such a determination must be made. Given the difficulty of compiling the tax and other records necessary to calculate the acreage represented by those who signed the petition, the trial court concluded that the town's decision to postpone examination of the petition until after the election was reasonable. Regarding the plaintiff's contention that the town impermissibly combined multiple amendments into a single ballot question, the court concluded that even if the town had separated the proposed amendments to the ordinance into two separate ballot questions for the medium- and high-density residential districts, there would have been insufficient acreage represented by the petition to successfully protest either district. Therefore, the trial court ruled that "[p]laintiff's challenge [to] the [format of the] amendment ... d[id] not cure [his] invalid protest petition." The court did not address the plaintiff's argument that six separate questions should have been presented on the ballot. This appeal followed.

On appeal, the plaintiff argues that the trial court erred in ruling that: (1) the town was not required to determine the validity of the protest petition prior to the voting; (2) the town council had jurisdiction to decide the petition's validity after the election was held; (3) the town administrator, a non-resident of the town, had standing to direct the town to review the petition; (4) the town had not impermissibly combined six separate amendments into a single ballot question; and (5) the totality of the circumstances did not render the council's ruling impermissible or unconstitutional.

I

■ We first address the plaintiff's argument that the town was obligated to determine the validity of the protest petition before voting began. In construing a statute, we look first to its plain meaning. *See Neville v. Highfields Farm,* 144 N.H. 419, 424 (1999). Further, when examining statutory language, we construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. *See Appeal of Van Lunen,* 145 N.H. 82, 86 (2000). Unless we find that statutory language is ambiguous, we do not look to legislative intent. *See Union Leader Corp. v. Fenniman,* 136 N.H. 624, 626 (1993).

RSA 675:5, II(b) states that a signed protest petition

> shall be submitted to the [town council] at least 7 days prior to [a] district meeting; provided, however, that each protest petition shall apply to only one article on the warrant. A notice of receipt of the protest petition shall be posted at the polling place, and the moderator shall announce at the opening of the town meeting that a protest petition has been received.

RSA 675:5, on its face, does not require that the validity of the protest petition be determined prior to voting. The statute only mandates that a protest petition "shall be submitted . . . at least 7 days prior to [a] district meeting," and that "notice of *receipt* of the protest petition" be posted and announced. RSA 675:5, II(b) (emphasis added). The legislature has not seen fit to provide when, after receiving a protest petition seven days before a district meeting, a town legislative body must determine its validity. Accordingly, we will not consider what the legislature might have said nor add words that it did not include. *See Appeal of City of Franklin,* 137 N.H. 723, 727-28 (1993).

■ Concluding, as we do, that the statute does not mandate a determination of the validity of a protest petition prior to voting, we also conclude that such a result is neither unjust nor absurd. Towns are faced with the difficult task of compiling tax and other records necessary to calculate the acreage represented by the signatories to a protest petition. In a perfect world, such calculations would occur prior to voting. However, whether a town completes the arduous task of calculating acreage prior to voting has no effect upon whether voters were properly notified or whether the petition was timely submitted.

## II

■ The plaintiff next argues that the council lacked jurisdiction to determine the validity of the protest petition following the vote and that the town administrator lacked authority to direct the council to review the petition in the first instance. The plaintiff's contentions rest upon the assumption that the validity of a protest petition must be determined prior to voting. Because we hold there is no obligation to determine the validity of such a petition prior to a vote under RSA 675:5, we find no merit to these arguments.

## III

The plaintiff also contends that the town impermissibly combined six separate amendments into one ballot question. The single question asked voters whether they wanted to amend various provisions of articles 5 and 6 of the town's ordinance by increasing the square footage and frontage requirements for lots in medium- and high- density districts. The proposed changes to lot size and density were based upon the public water and sewage services provided to such lots. The plaintiff argues that each proposed amendment to the ordinance should have been presented as a separate ballot question. At the very least, the plaintiff argues that the six amendments should have been grouped into two questions, so that the proposed changes for the medium-density district were voted on separately from the changes to the high-density district. By combining the various proposed amendments into a single ballot question, the plaintiff argues that the town made it impossible for the protestors to get the requisite number of signatures to meet the twenty-percent acreage requirement.

The town responds that this issue was not properly preserved below. Further, assuming that the issue was preserved, the town argues that the six proposed changes were interrelated and addressed the single issue of lot area and density. Because the six proposed amendments dealt with a related issue, the town concludes it was proper to combine them into one ballot question.

The trial court assumed the issue was preserved and found that, even if all the signatories to the petition were considered for each district separately, the petition would still not have met the twenty-percent representation requirement of RSA 675:5, I-a(a). The court did not address whether the single ballot question should have been splintered into six separate questions. Assuming without deciding that the issue was properly preserved, we concur with the trial court's result, albeit for different reasons. This court will sustain the decision of the trial court if

there are valid alternative grounds to support it. *See Quinlan v. City of Dover*, 136 N.H. 226, 230 (1992).

■ ■ It is the planning board that determines the final form of an ordinance, amendment, or amendments to be presented to the voters, *see* RSA 675:3, III, and statutory provisions regulating the form of such ballot questions are generally directory rather than mandatory. *See Keene v. Gerry's Cash Mkt., Inc.*, 113 N.H. 165, 167-68 (1973). In *Albert v. City of Laconia*, 134 N.H. 355 (1991), we applied the doctrine of the "single subject" rule to a statutory limitation against multiple changes to a town charter in a single amendment. Under this rule, it is not the number of amendments grouped together under one "single subject" that is important; rather, it is the interrelated nature of the amendments and the subject at issue. *See id.* at 358-59. Concluding that changes to multiple sections of a charter may be done by a single amendment, as long as each section is germane to the subject of the amendment, we held that the town's proposed amendment did not violate this rule. *Id.* at 360; *see also* RSA 49-B:5, II (Supp. 2000).

■ ■ We find the "single subject" rule applicable to RSA 675:3 and hold that a proposed amendment that includes changes to multiple sections of an ordinance is proper so long as the sections sought to be changed are reasonably germane to the subject of the amendment. Our holding is in accord with other courts, which have applied the "single subject" rule in the context of amending town ordinances. *See Baker v. Atkinson*, 625 N.W.2d 265, 273-74 (S.D. 2001); *Legislature of State of Cal. v. Eu*, 816 P.2d 1309, 1320-21 (Cal. 1991); 56 AM. JUR. 2D *Municipal Corporations* § 301 (2000). This rule should be construed liberally, allowing municipalities to include in one ballot question all matters that are naturally and logically connected to the single subject presented by the amendments.

■ Here, the single subject of the ballot question was changing the lot area and density of medium- and high-density districts based upon the public water and sewage services provided to each lot. A review of the town's zoning ordinance supports the conclusion that the proposed changes to articles 5 and 6 of the ordinance were interrelated. Both provisions of the ordinance regulate lot size and density for those lots serviced by municipal water or sewer and, as such, it was appropriate to combine the various changes in one ballot question so as to avoid an anomalous result where one lot size would be treated disproportionately from others. *Cf. Albert*, 134 N.H. at 360 (separating each proposed change

could result in certain changes being defeated, thus destroying the usefulness of all the other adopted changes). The ballot question was constructed so as to include only those provisions of the ordinance that were logically related to its singular purpose. Further, we note that each proposed amendment to the ordinance was specifically referenced in the ballot question and posted prior to the election. The trial court reached the correct result, albeit on the wrong grounds, and we will not disturb it.

The plaintiff's remaining argument lacks merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.