*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HORACE SHEFFIELD III and RODRICK HARBIN,

        Plaintiffs-Appellees,

v

DETROIT CITY CLERK and DETROIT ELECTION COMMISSION,

        Defendants,

and

DETROIT CHARTER REVISION COMMISSION,

        Intervening Defendant-Appellant.

FOR PUBLICATION
June 3, 2021
9:00 a.m.

No. 357298
Wayne Circuit Court
LC No. 21-006043-AW

---

ALLEN A. LEWIS and INGRID D. WHITE,

        Plaintiffs-Appellees,

v

DETROIT CITY CLERK and DETROIT ELECTION COMMISSION,

        Defendants,

and

DETROIT CHARTER REVISION COMMISSION,

        Intervening Defendant-Appellant.

No. 357299
Wayne Circuit Court
LC No. 21-006040-AW

-1-

Before:  CAMERON, P.J., and FORT HOOD and LETICA, JJ.

CAMERON, P.J.

In these consolidated appeals, intervening defendant-appellant Detroit Charter Revision Commission appeals as of right the trial court's opinion and order granting plaintiffs mandamus relief and compelling defendants Detroit City Clerk and the Detroit Election Commission to remove Proposal P from the ballot for the upcoming primary election.[1]  We affirm.

BACKGROUND

In 2018, Detroit voters approved a ballot proposal to create a Charter Review Commission to consider revision of the 2012 Detroit City Charter and subsequently elected the original nine members of appellant the Detroit Charter Revision Commission (DCRC).  The DCRC started meeting in November of 2018 and on March 5, 2021, presented its proposed revised charter to the Governor for review under MCL 117.22.  Following an expedited review assisted by the Attorney General, on April 30, 2021, the Governor informed the DCRC in writing that "the current draft has substantial and extensive legal deficiencies" and that given those defects, she did not approve the Proposed 2021 Revised Charter.  The Governor notified the DCRC of her objections to the proposed revised charter and included the review provided by the Attorney General explaining the legal deficiencies in detail.  The DCRC made some revisions based on the Governor's objections but did not submit their new draft of the proposed revised charter to the Governor for approval until May 13, 2021.  The Governor declined to conduct further review, pointing out that this new version of the proposed revised charter was presented to her after her prior disapproval and after the May 11, 2021 deadline to submit ballot wording to the Detroit City Clerk under MCL 168.646a(2).

In the meantime, on May 6, 2021, the DCRC resolved to submit adoption of the proposed revised charter to the voters designated as Proposal P, which read "*Shall the City of Detroit Home Rule Charter proposed by the Detroit Charter Revision Commission be adopted?*"  The DCRC then submitted Proposal P to defendant Detroit City Clerk, who twice refused to place it on the ballot because "Section 22 of the HRCA (Home Rule City Act) does not contemplate a path to the ballot for any commission proposed revision that does not have the Governor's approval."  Despite that rejection, on May 11, 2021, the deadline for placing Proposal P on the ballot, defendant Detroit Elections Commission voted to place the proposal on the ballot.

In two complaints filed the same day, plaintiffs sued defendants for declaratory, injunctive, and mandamus relief, arguing that since the proposed revised charter had not been approved by the Governor as required by MCL 117.22, it could not be placed on the ballot for voter approval.  Plaintiffs argued that since the deadline for placing approval of the proposed revised charter on the August 3, 2021 primary ballot had passed, the DCRC cannot have Proposal P placed on the ballot

---

[1] Consideration of this appeal has been expedited pursuant to the Michigan Supreme Court's order of June 1, 2021.

even if it were to obtain the Governor's approval of its latest version of the proposed revised charter. Accordingly, plaintiffs argued that Proposal P must be stricken from the ballot.

The trial court granted the DCRC's motion to intervene, held two hearings on the matter, and issued a written opinion and order which granted plaintiffs the requested mandamus relief. The court explained that "[a] writ of mandamus is an extraordinary remedy that will only issue if (1) the party seeking the writ has a clear legal right to the performance of the duties sought to be compelled (2) the defendant has a clear legal duty to perform the act requested (3) the act is ministerial, that is it does not involve discretion of judgment and (4) no other legal or equitable remedy exists that might achieve the same result." The main question before the trial court was whether defendants improperly authorized placement of Proposal P on the ballot for the upcoming primary. The court rejected the DCRC's argument that the Michigan Constitution allowed it to present a charter revision to Detroit voters without the Governor's approval, noting that while Const 1963, art 7, §22 gave city electors the power to adopt and amend their charters, the same section stated that those powers were "subject to the constitution and law." While §22 gave home rule cities full power over their own property and government, the court found that they must still abide by statutes and case law. Citing *Northrup v City of Jackson*, 273 Mich 20, 26; 262 NW2d 641 (1935), the court pointed out that since at least 1935 Michigan had required that home rule cities receive the Governor's approval before a charter provision can become enacted into law. Under MCL 117.22, which is a provision of the Home Rule City Act (HRCA), MCL 117.1 *et seq*., a revised city charter must have the Governor's approval before it can be presented to the voters. The HRCA and case law distinguished between charter revisions which involved major changes from charter amendments involving fewer substantive changes. The trial court concluded that while MCL 117.22 contained language providing for a means to submit an amendment to the voters despite the Governor's rejection, "MCL 117 .22 does not provide for a mechanism whereby a revision of the Charter can be submitted to the voters without the approval of the Governor."

The trial court rejected the DCRC's argument that it could continually revise the content of the proposed revised charter beyond the filing deadline, finding that position untenable because "absentee voters could vote on a proposed revision containing one version and voters who went to the poll on August 3, 2021 would be voting on a different substantive proposed revision to the Detroit City Charter." The court found that "[n]o Michigan law authorizes such power to a Charter Revision Commission" and "that plaintiffs have a clear legal right to performance of the duty sought to be compelled." MCL 117.23 required the language of the proposed charter revision to be published in advance of the election so the voters can examine the proposed revision before voting. At that time, the DCRC had two versions of the proposed revised charter, and had not provided the voting public with a clear understanding of which proposed charter revision they were being asked to approve. The court found that "[i]rreparable harm will come to the voters of Detroit if they do not have sufficient time to review the proposed Charter revision or know which version they are being asked to review." The trial court concluded that the DCRC's proposed revised charter had not been approved by the Governor under MCL 117.22 and so cannot be submitted to the voters at the August 3, 2021 primary.

The trial court also concluded that defendants had improperly placed Proposal P on the ballot where it had not been approved by the Governor as required by MCL 117.22. Because there was no approval by the Governor, the proposed charter revision cannot be placed on the ballot and submitted to the voters. The court concluded that plaintiffs had a clear legal right to have the Clerk

and Elections Commission comply with the requirements of MCL 117.22, that the Clerk and Elections Commission have a clear legal duty not to place Proposal P on the ballot due to the violation of MCL 117.22, and that it was a ministerial act for them to refuse to submit Proposal P for placement on the ballot for the upcoming primary. The court granted plaintiffs' petition for mandamus and ordered the Detroit City Clerk and Detroit Election Commission to remove Proposal P from the August 3, 2021 ballot. Since the court was granting mandamus relief it declined to address plaintiffs' motion for injunctive relief or defendant Detroit City Clerk's motion for summary disposition.

ANALYSIS

Intervening defendant-appellant DCRC asserts that the trial court erred by granting plaintiffs the requested mandamus relief, raising the following arguments: (1) that the city has the constitutional power to place the charter to a popular vote; (2) that MCL 117.22 allows it to present the proposed revised charter to the voters for approval regardless of the Governor's rejection of the proposed charter revision; (3) that the proposed charter revision did not need to be complete before its approval was placed on the ballot by Proposal P; (4) that the trial court had no basis to enter a final judgment granting mandamus relief; (5) that removal of Proposal P from the ballot was not a ministerial act; (6) that the trial court correctly denied injunctive relief; and (7) that the substance of the revised charter cannot be at issue. We find no errors of legal interpretation or abuse of discretion and so affirm the trial court.

A trial court's decision whether to grant mandamus relief is reviewed for an abuse of discretion. *Berry v Garrett,* 316 Mich App 37, 41; 890 NW2d 882 (2016). Whether a plaintiff has a clear legal right to performance of a duty and whether the defendant has a clear legal duty to perform present questions of law reviewed de novo. *Id.* Questions of constitutional and statutory interpretation also present issues of law which are reviewed de novo. *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014).

Mandamus is an extraordinary remedy used to enforce duties required of governmental actors by law. *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 618; 822 NW2d 159 (2012); *Mercer v Lansing*, 274 Mich App 329, 333; 733 NW2d 89 (2007). The plaintiff seeking a writ of mandamus has the burden of establishing four requirements:

> (1) the party seeking the writ has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgement, and (4) no other legal or equitable remedy exists that might achieve the same result. [*Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 378; 909 NW2d 1 (2017) (quotation marks and citation omitted).]

I.

We first reject the DCRC's argument that the Michigan Constitution grants it the power to submit a proposed charter revision to the voters regardless of statutory restrictions. Appellant relies on Const 1963, art 7, §22, which reads:

> *Under general laws* the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law*. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Emphasis added.]

Furthermore, the first sentence of Const 1963, art 7, §34 states "[t]he provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor."

Constitutional language is analyzed consistent with the rules of statutory interpretation. *In re Boynton*, 302 Mich App 632, 639; 840 NW2d 762 (2013). When interpreting provisions of the Michigan Constitution, this Court should give constitutional language "the meaning that 'reasonable minds, the great mass of people themselves, would give it' while considering 'the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished.' " *Aguirre v Dept of Corrections*, 307 Mich App 315, 320; 859 NW2d 267 (2014). The language of art 7, §22 and §34 clearly show an intent to give cities broad powers to conduct their own affairs relating to their government. See *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 185-188; 880 NW2d 765 (2016). However, the wording of §22 expressly states that a city's power to adopt resolutions and ordinances relating to its government is "*subject to the constitution and law*." More significantly, the first sentence of §22 states that the electors of each city have the power and authority to adopt and amend its charter "[*u*]*nder general laws*." Reasonable minds would interpret the phrases "under general laws" and "subject to the constitution and law" to mean that city voters have the power to adopt a new charter or amend its charter within the prescriptions of Michigan law, including the HRCA. See *City of Detroit v Walker*, 445 Mich 682, 688-689; 520 NW2d 135 (1994).

II.

We also reject appellant's argument that it can submit the proposed revision to the voters regardless of whether the Governor approved the revision. Section 22 of the HRCA, MCL 117.22, states:

> Every amendment to a city charter whether passed pursuant to the provisions of this act or heretofore granted or passed by the state legislature for the government of such city, before its submission to the electors, *and every charter before the final adjournment of the commission,* shall be transmitted to the governor of the state. *If he shall approve it, he shall sign it; if not, he shall return the charter to the*

*commission* and the amendment to the legislative body of the city, with his objections thereto, which shall be spread at large on the journal of the body receiving them, and *if it be an amendment proposed by the legislative body, such body shall re-consider it, and if 2/3 of the members-elect agree to pass it, it shall be submitted to the electors. If it be an amendment proposed by initiatory petition, it shall be submitted to the electors notwithstanding such objections*. [Emphasis added.]

"The primary goal of statutory interpretation is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *Epps v 4 Quarters Restoration LLC,* 498 Mich 518, 529; 872 NW2d 412 (2015). Courts "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002)). Courts should not supply provisions omitted by the Legislature, since "[i]t is to be assumed that the Legislature . . . had full knowledge of the provisions . . . and we have no right to enter the legislative field and, upon assumption of unintentional omission . . . supply what we may think might well have been incorporated." *Johnson*, 492 Mich at 187 (quoting *Reichert v Peoples State Bank*, 265 Mich 668, 672; 252 NW 484 (1934)). "The use of the word 'shall' denotes mandatory action." *Wolfenbarger v Wright*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350668); slip op at 15.

The language of HRCA §22 states before an amendment to a city charter or new or revised city charter is submitted to the voters for approval, it must be presented to the Governor, who can either approve it by signing it, or decline to approve it while stating specific objections. The use of the word "approve" clearly denotes that the Governor is to exercise judgment as to the quality of the proposal, as opposed to merely provide gratuitous support of the proposed charter or amendment. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "approve" as "to give formal or official sanction to").

Appellant DCRC does not take issue with the trial court's conclusion that the HRCA and Michigan law distinguished between amendments to city charters as opposed to revisions presenting a new charter for adoption.[2] While MCL 117.22 requires both amendments to city charters and charter revisions proposed by charter commissions to be presented to the Governor for approval, and provides a way for certain amendments to be presented to the voters despite the Governor's veto, the statute contains no similar provisions for passage of charter revisions following their rejection by the Governor. Where things expressed in statutory language are members of an associated group or series, courts should infer that the unmentioned things were excluded by deliberate choice rather than through inadvertence. *Esurance Prop & Cas Ins Co v Michigan Assigned Claims Plan*, 330 Mich App 584, 591; 950 NW2d 528 (2019). The Legislature has made no provision for the revised charter to be submitted to the voters over the Governor's

---

[2] In effect, revision of a charter means the fundamental change of creating an entirely new charter, whereas an amendment means a correction of detail. *Kelly v Laing*, 259 Mich 212, 217; 242 NW 891 (1932); *Midland v Arbury*, 38 Mich App 771, 775; 197 NW2d 134 (1972).

express rejection, and this Court will not create such a provision where it cannot reasonably be inferred from the statutory language. *Byker v Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002) (holding that courts will not read words into a statute that the Legislature has excluded).

Additionally, even if the proposed revised charter is considered an amendment, the last two sentences of §22 state only two situations where a charter amendment can proceed to a vote following the Governor's rejection: (1) where the charter amendment is passed by the legislative body (i.e. the city council), the city council can override the veto with a two-thirds vote of its members and submit the amendment to the electors; and (2) if the amendment is proposed by a voter initiative, it shall be submitted regardless of the Governor's objections.[3] The DCRC's proposed revised charters fall outside the scope of either type of amendment which can be submitted to the voters over the Governor's rejection. The statute contains no provisions for overriding or ignoring the Governor's veto where the voters approve a general, unspecified revision of a charter and subsequently select a commission to draft a new charter.[4]

Furthermore, we are not convinced by appellant's argument that the proposed revised charter can simply proceed to a vote by the electors without the Governor's approval, since the express language of §22 does not forbid it. We agree with the trial court that defendants' interpretation would make submission of the draft revision to the Governor for approval an "empty and useless gesture." When interpreting statutory language, courts should presume that the Legislature did not intend to do a useless thing and attempt to give effect to all statutory language. *People v Cunningham*, 496 Mich 145, 157; 852 NW2d 118 (2014); *Klopfenstein v Rohlfing*, 356 Mich 197, 202; 96 NW2d 782 (1959). The language of §22 states that if the Governor does not approve the charter, she "shall return the charter to the commission and the amendment to the legislative body with [her] objections thereto, which shall be spread at large on the journal of the body receiving them . . . ." That same sentence then states the means for overriding the rejection of "an amendment proposed by the legislative body" without any reference to a means for submitting a revised charter proposed by a charter commission. The statutory language does not merely provide for public commentary by the Governor, but instead provides for rejection based on specific objections with the apparent assumption that the commission will act on those objections, correct the charter accordingly, and submit the proposed revised charter to the Governor before the final adjournment of the commission and in time to have the proposed revised charter presented to the voters. Appellant DCRC did not do that, so its proposed revised charter should not be placed before the voters for approval by way of Proposal P.

---

[3] This is consistent with 1963 Const, art 2, § 9, which provides as follows: "No law initiated or adopted by the people shall be subject to the veto power of the governor[.]"

[4] There is also no indication that the nine-member city charter commission described in MCL 117.18 reviewed the Governor's objections and nonetheless agreed to pass the proposed amendment. Consequently, no matter how the changes are construed, there was not compliance with MCL 117.22.

## III.

We agree with the trial court's rejection of appellant DCRC's claim that under MCL 117.22 it can continually redraft the proposed charter provision beyond the May 11, 2021 filing deadline. The relevant language of MCL 117.22 does state that a proposed revised charter shall be transmitted to the governor of the state "before the final adjournment of the commission." The final adjournment of the DCRC is to occur August 6, 2021, three days after the primary when the voters are supposed to approve or deny the proposed revised charter. Following appellant DCRC's logic, it could submit the final proposed revised charter to the Governor any time up until August 6, 2021, three days after the voters have enacted it. We must assume that the Legislature did not intend to require the Governor to engage in a useless act. *Cunningham*, 496 Mich at 157; *Klopfenstein*, 356 Mich at 202. MCL 117.23(1) specifically requires a charter commission to publish the proposed revised city charter "before submission to the electors." The deadline for placing Proposal P on the ballot was May 11, 2021. According to appellant, absentee ballots for the August 3, 2021 primary election will be available to the voters on June 19, 2021. It is important to inform voters of what they are actually voting for while at the same time not confusing them. *Advisory Opinion on Constitutionality of 1982 PA 7 (Dissent by Williams, CJ)*, 418 Mich 49, 90 n 10; 340 NW2d 817 (1983). DCRC's interpretation of §22 would likely do neither, and could essentially result in a bait and switch in that some absentee voters voting to adopt one version of the proposed revision and later voters to adopt a subsequent proposed revision containing different substantive provisions. In effect, appellant could be asking the voters to vote for a revision of appellant's choosing at a later time. As noted by the trial court "No Michigan law authorizes such power to a charter review commission."

## IV.

Appellant DCRC's brief on appeal argues that plaintiffs were not entitled to mandamus relief because the trial court had no basis to enter a final judgment in the actions. However, appellant has provided no legal argument or authority in support of this assertion. It is well-established that an appellant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Appellant has abandoned this argument by failing to brief it. *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019)

## V.

The trial court did not err by finding that removal of Proposal P from the ballot is a ministerial task.

An act is ministerial where "the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry*, 316 Mich App at 42 (quoting *Hillsdale Co Senior Servs, Inc* v *Hillsdale Co,* 494 Mich 46, 58 n 11; 832 NW2d 728 (2013)). Where a candidate for public office does not meet the qualifications for that office and must be removed from the ballot, removal of that name from the public ballot is a ministerial act "because it would not require the exercise of judgment." *Berdy v Buffa,* 504 Mich 816, 879; 928 NW2d 204 (2019); *Barrow v City of Detroit Election Comm*, 301 Mich App

404, 412-413; 836 NW2d 498 (2013). The same principles should be applied to a ballot proposal which should not have been placed on the ballot. The trial court found that Proposal P was placed on the ballot illegally in violation of MCL 117.22. Its removal leaves nothing to the exercise of defendants' judgment or discretion and so is a ministerial act.

VI.

Finally, appellant DCRC argues that the trial court correctly denied injunctive relief and that the substance of the revised charter is not at issue at this time. The trial court declined to address the issue of injunctive relief because it was unnecessary to do so after granting plaintiffs mandamus relief. The trial court's written opinion specifically stated that it did "not consider the substantive merits of the contents of Proposal P" and contains nothing which suggests that the court was influenced by the contents of the proposed revised charter. Since addressing these arguments would have no practical legal effect on the controversy before us, they present moot points which will not be addressed. *General Motors Corp v Dept of Treasury,* 290 Mich App 355, 386; 803 NW2d 698 (2010).

The trial court's May 26, 2021 opinion and order granting mandamus is affirmed. With this decision, the stay directed by the Supreme Court during this Court's consideration of these matters now expires. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2).


/s/ Thomas C. Cameron
/s/ Anica Letica

-9-