SUMMERS, Justice.
Because of a home rule amendment to the constitution in 1952, Louisiana’s legislature may not pass any local or special law creating municipal corporations or amending, modifying or repealing their charters, with the exception of municipalities then operating under special legislative charters. La.Const. Art. 14, Sec. 40(a). The amendment did, however, require that *350 the legislature provide by general law a method whereby municipalities could frame and adopt a home rule charter by a vote of the majority of its qualified electors. Home rule charters so adopted are to be amended, modified or repealed in a similar manner. Ibid. Sec. 40(c).
To implement this constitutional amendment, the legislature enacted Act 325 of 1952, incorporated into the Revised Statutes as Sections 1381 through 1390 of Title 33, providing a method by which municipalities could frame and adopt home rule charters.[1]
The City Council of Alexandria, composed of a mayor and two commissioners, acting upon the constitutional and legislative authority thus enacted, adopted appropriate resolutions on November 3, 1969 appointing a charter commission to frame a home rule charter. As directed by Section 1383 of Title 33 of the Revised Statutes, representatives of veterans, business, labor and the professions, respectively, were named by the city council to the commission. The mayor was named as the fifth member and chairman of the commission.
Within a year of its formation, as required by Section 1383, the charter commission submitted to the city council its proposal for a home rule charter. An election was called for February 2, 1971. The proposed charter was rejected by the electors of the city of Alexandria by a vote of 5,211 to 5,071.
In the meantime, shortly before the election, the commissioner representing business died. After the election the commissioner representing labor resigned. On two separate occasions thereafter, on March 29, and April 18, 1971, the mayor, at the urging of the charter commission, acting as a member of the city council, proposed the names of individuals to fill the vacancies created by the death and resignation. On each occasion the motions failed for lack of a second.
Notwithstanding the vacancies and the evident disapproval of the city council, the charter commission proceeded to frame a second charter proposal. The new plan, calling for a strong mayor-form-of-government, was presented in a charter commission report to the city council on September 7, 1971. The charter commission report also requested that the charter be advertised and that it be submitted to the electorate for approval in an election to be called on February 1, 1972. The mayor’s motion that the report of the charter commission be approved was tabled. Another attempt by the mayor in October 1971 to have the council approve the charter commission report also failed.
Finally, on November 15, 1971 the city council, over the mayor’s opposition, adopted a resolution setting forth, inter alia, that “the legal status of the former Charter Commission is in question and doubt”, and a new and impartial commission should be appointed to frame a home rule charter for the approval of the electorate. The resolution then provided for a referendum to determine whether the charter should provide for a five-man commission council or a mayor-council form of government. It was also resolved that after the referendum a new charter commission be appointed to draft a charter providing for the form of government approved by the referendum.
The present suit followed on December 16, 1971. It is a mandamus proceeding brought by the charter commission and twenty-one private citizens. The suit seeks to compel the city council and the members thereof to call an election which would enable the electorate of the city to vote on the proposed home rule charter submitted to the city council in the charter commission’s report of September 7, 1971.
As a defendant the mayor answered, admitting all allegations of the charter commission’s petition. He concluded with a prayer that an order issue directing the *351 city council to publish the proposed charter and submit it to a vote of the electors.
However, the remaining members of the city council filed exceptions and an answer (1) contesting the right of the charter commission to sue; (2) alleging that the time for calling an election had prescribed because the charter commission had not submitted the second charter to the governing authority within one year of their appointment as required by Section 1383 of Title 33 of the Revised Statutes; (3) setting forth that only one charter and one election is authorized by the Act during the tenure of any charter commission and that a second election would therefore be a vain and useless act; (4) contending that the filling of vacancies in the membership of the charter commission is discretionary with the city council, and their failure to fill the vacancies was an exercise of discretion against which mandamus does not lie; (5) maintaining that appointment of the mayor to the charter commission was invalid and in derogation of the obvious spirit of the legislation (La.R.S. 33:1381-33:1390) prescribing the method for framing home rule charters; thus, because of the mayor’s invalid appointment, after the two vacancies occurred, the commission was illegally constituted, for no quorum could be assembled to validate their actions; (6) averring that after the first election the continuance of the charter commission was a matter which addressed itself to the discretion of the city council; therefore, when the charter commission continued to act after that time contrary to the wishes of the city council, their actions were without legal effect, and mandamus will not lie to compel the city council to continue the charter commission in effect —that matter being wholly discretionary with the council.
The trial judge was of the opinion the denial of the charter commission’s right to sue was irrelevant because twenty-one other citizens of Alexandria were also plaintiffs and no question was raised of their right to maintain this suit. He was also of the opinion that the defeat of the first charter proposal did not end the tenure of the charter commission, for by the explicit terms of Section 1387 the term of office of the members of the charter commission was four years.
Further, the contention was rejected that filling vacancies in the membership of the charter commission was discretionary with the city counsel. Therefore, the trial judge held the city council could not assert the lack of full membership to invalidate the charter commission’s actions, since the deficiency in membership was due to their own failure to perform a mandatory function prescribed by law.
Finding that the governing authority was mandatorily required to call an election when a proposed charter was submitted, the trial judge was of the opinion the obligation to do so was ministerial. He accordingly ordered that the city council advertise the proposed charter and submit it to the electorate not earlier than sixty or more than ninety days from the date of j udgment.
The Third Circuit reversed on the single ground that under the plain language of Section 1383 the charter commission could not function without representatives of business and labor. The Court did not answer the contention that this deficiency in the composition of the charter commission membership was due entirely to the failure of the city council to fill vacancies, and, therefore, the city council could not assert its own misconduct as a defense. 258 So. 2d 393. We granted certiorari. 261 La. 453, 259 So.2d 911.
I.
The contention that the charter commission has not been authorized by law to institute and maintain this suit is irrelevant as the trial judge found. Even, assuming the validity of this contention, twenty-one citizens other than the members of the charter commission are parties plaintiff *352 and their right to institute and maintain this suit has not been questioned.
II.
The requirement of Section 1383 that the charter commission “shall prepare the charter and submit same within one year after appointment,” applies, in our view, to the time allowed for submitting a complete charter proposal, as distinguished from an amendment, modification or repeal. See Sec. 1386. Since this time requirement was satisfied with respect to the first defeated proposal, the question remains whether the charter commission may submit a second proposal after one year from the date of their appointment. So far as we can ascertain, the prescribed statutory method does not permit this result. In our view the statute requires that all proposals for complete charters be submitted within one year after the commission appointments. In the instant case the first proposal was submitted near the end of the prescribed year, making a second submission within the one year impossible.
Where the method of adoption or amendment is prescribed by legislation implementing constitutional authorization, as here, the prescribed method is exclusive and a failure to comply substantially with the mandatory requirements is fatal. La. Civil Code art. 12; Uhl v. Collins, 217 Cal. 1, 17 P.2d 99 (1932); State ex rel. Walker v. Best, 121 Fla. 304, 163 So. 696 (1935); 62 C.J.S. Municipal Corporations §§ 90, 93. Faced with inconsistencies in the legislation prescribing the method to be followed, we must, in some manner, attempt a reconciliation in order that the law may be given effect. La.Civil Code arts. 16, 18.
Although the language of the statute is unclear, a feasible plan appears to emerge from its entirety. La.R.S. 33:1381-33:1390.
Charter commissions are formed of representative members whose terms of office are four years. They are apparently constituted to frame and propose one home rule charter which is complete within itself and which supersedes in its entirety the existing charter of the municipality. Amendments the commission may propose, on the other hand, imply additions or changes within the lines of the original instrument designed to effect an improvement or better carry out the purposes for which the basic charter was framed. McConnell v. City of Kansas City, 282 S.W.2d 518 (Mo.1955); Kelly v. Laing, 259 Mich. 212, 242 N.W. 891 (1932); State v. City Commission of San Angelo, 101 S.W.2d 360 (Tex.Civ.App.1937).
Once the charter commission submits an entire charter for adoption within a year of its appointment, and the charter proposal is approved, the charter commission then continues to exist during the remainder of the four-year term for the limited purpose of submitting proposals to amend, modify or repeal the charter previously submitted by them for adoption. The act only permits amendments to the charter “adopted” within the tenure of the commission submitting the amendment, and then not oftener than every two years. La.R.S. 33:1386, 1388.
Amendments, modifications or repeals do not fall within the same category as proposals of entire charters, for by Section 1386, the home rule charter adopted by any municipality may be amended, modified or repealed by proposals submitted to and ratified by the qualified electors of the municipality “in the same general manner” provided for the adoption of the entire charter. This permissive language would, in the case of an amendment, allow dispensing with the one-year time requirements prescribed by Section 1383 for submitting “the charter”. Such an interpretation would, moreover, find acceptance under the broad language of the constitution in Article XIV, Section 40, providing that home rule charters shall be amended, modified or repealed in a “similar” manner.
*353 This interpretation, making it unnecessary that amendments be submitted by the charter commission within one year of their appointment, would enable amendments to be proposed and voted upon after one year. No violence would thereby be done to the language of the statute, and the modification with respect to amendments would fall within the tolerance allowed by the language “in the same general” or “similar” manner. A substantial compliance with the prescribed method would therefore be accomplished. This interpretation would, moreover, lend some meaning to the provision fixing the tenure of the commission members at four years. A contrary view would leave a commission without authority or power after the first year following their appointment. This same latitude, however, is not permitted where an entire charter is to be proposed for adoption. There the one-year time requirement is unambiguous and mandatory. To disregard the time requirement where entire charters are concerned would entail rewriting the statute.
The conclusion to be derived from this approach to the problem is that the charter commission acted beyond the scope of its authority when it framed and submitted a second charter after one year following its appointment. This result is supported by the argument that once a proposed charter has been framed by one charter commission and rejected by the electorate, another and differently constituted charter commission would more likely frame an acceptable charter. The fact that the same charter commission may remain in office after it has framed an accepted charter for the limited purpose of proposing amendments makes the four-year tenure meaningless when the complete charter proposal is rejected. For in this situation the commission can perform no function after the first year. In any event the wisdom of the plan is not a question for this court.
Thus if the language of the statute is to be given some effect within acceptable bounds of statutory construction, the result we have reached must follow.
A contrary interpretation would involve even more objectionable inconsistencies. If we should decide that the one-year requirement could be disregarded and a second charter could be submitted like amendments under Section 1386, two things must occur: First, it would be necessary in order to circumvent the one-year restriction to read into Section 1386 language permitting an entire charter proposal to he submitted as in the case of an amendment, that is, “in the same general manner provided . . . for the adoption of” charters. This, despite the clear meaning that Section 1386 is intended as a method for amendments as distinguished from complete charter proposals. Next, the second charter proposal would, if treated like an amendment, have to be considered premature. Section 1388 requires that proposals to amend, modify or repeal home rule charters “shall not be submitted oftener than every two years.” As the facts make clear, the proposal of September 7, 1971 is within two years of the first submission to the electorate on February 2, 1971. It would be necessary to disregard this two-year requirement. Under this assumption, unless this two-year restriction intended for amendments is also imposed on entire charter proposals, the result would be that proposals for amendments to charters could not lie submitted oftener than every two years, whereas complete charter proposals could be submitted at more frequent intervals. Obviously such a result is unintended. The two-year restriction is designed to economize and to minimize the expense and inconvenience to the voting public. The restriction should properly apply to both charter proposals and amendments. We will not, therefore, indulge in these assumptions and strike from the statute the one-year time limitation for submitting complete charter proposals.
*354 The result reached makes consideration of other issues unnecessary to the decision.
For the reasons assigned, judgment is rendered dismissing plaintiffs’ suit at their cost.
APPENDIX
“§ 1381. Enabling clause
“Any municipality desiring to avail itself of the provisions of the constitution authorizing the adoption of home rule charters may proceed to frame, adopt, amend or repeal same as herein provided.
“§ 1382. Methods of proposing home rule charter
The governing body of any municipality may on its own motion cause a home rule charter to be framed and submitted for adoption to the electors of the municipality in the manner hereinafter provided, or such proposal may be made in a petition filed with the governing authority and signed by not less than 25 percent of the qualified electors of such municipality.
“§ 1383. Charter commission; membership ; preparation and submission of charter; publication
“Where proceedings have been initiated for a home rule charter the governing authority of the municipality shall appoint a Charter Commission composed of five members to frame such charter. The chairman of said commission shall be designated by the governing authority and shall be one of its members. One of the remaining four members shall be selected as a representative of business, one as a representative of labor, one as a representative of the professions and one as a representative of veterans. Said commission shall prepare the charter and submit same within one year after appointment. The proposed charter shall then be published once in a newspaper of general circulation within the municipality.
“§ 1384. Submission of charter to electors
“Not earlier than sixty days nor later than six months after such publication said proposed charter shall be submitted to a vote of the qualified electors of the municipality at a special election, or at any primary or general election that is to be held within said period of time.
“§ 1385. Ratification by majority vote; supersession of existing charter; filing of copies of new charter
“If a majority of the qualified voters voting thereon at such election shall vote in favor of such home rule charter it shall be deemed to be ratified and shall become the organic law of such city, town or village and any existing charter under which said municipality may be operating shall be thereby superseded. One copy of the charter so ratified and approved shall be filed with the Secretary of State, one with the clerk of court for the parish in which the municipality is located, and one in the archives of the municipality to remain as a part of its permanent records.
“§ 1386. Amendment, modification or repeal
“A. The home rule charter adopted by. any municipality may be amended, modified or repealed by proposals submitted to and ratified by the qualified electors of the municipality in the same general manner provided above for the adoption of such charter. Amendments may be proposed by the governing authority of the municipality and by petition of the number of electors above mentioned and submitted to ,the voters at the same election. The voters may at their option accept or reject any or all of said amendments. A proposal to repeal a home rule charter that has been adopted shall likewise be submitted to the electors of the municipality as above set forth.
*355 “B. In all elections held, in parishes having permanent registration, for the purpose of amending, modifying or repealing
a home rule charter as permitted by Subsection A of this Section, the registrar shall deliver the precinct register to the parish custodian of voting machines for use in each such election in the manner provided by and in accordance with the procedure set forth in R.S. 18:257.
“§ 1387. Commission; terms of office; vacancies
“The terms of office of the members of the charter commission shall be four years. Any vacancy on said commission shall be filled by the governing authority of the municipality.
“§ 1388. Restriction on proposals to amend, modify or repeal
“Proposals to amend, modify or repeal home rule charters shall not be submitted oftener than every two years.
“1389. Manner of calling and holding elections
“The elections herein provided for shall be called and held in the same manner as is provided for the calling and holding of elections on bond issues as provided in Part II of Chapter 4 of Title 39 of the Louisiana Revised Statutes of 1950 except that all qualified voters of the municipality shall be eligible to vote at such elections and the form of ballot shall be prescribed by the charter commission so that the voter may signify whether he is for or against the proposed home rule charter or the amendment, modification or repeal thereof as the case may be.
“§ 1390. Effect of amendment or repeal on salary or term of office
“No amendment or repeal of a home rule charter shall shorten the term for which any official was elected or reduce the salary of his office for that term.”

. La.R.S. 33:1381-33:1390. (See Appendix.)