Dear Mr. Hall:
This office is in receipt of your request for an opinion of the Attorney General regarding the proposed revisions to Bossier City's charter, as proposed by the charter review commission established by ordinance on April 18, 2000.
Your letter provides the following facts, which are reprinted here for the reader's benefit:
 1. The Bossier City Council, on April 18, 2000, passed an ordinance to establish a citizen's charter review commission for the purpose of revising Bossier City's home rule charter.
 2. Appointments were made to the commission pursuant to the ordinance on May 16, 2000.
 3. The proposed revisions to the Bossier City Charter were tendered to the mayor and the city council by Don Pierson, Chairman of the Charter Review Commission.
 4. On November 20, 2001, the charter review commission appeared before the city council and formally presented the proposed revisions to the charter.
 5. Subsequent to the submission of the proposed revisions to the charter to the Bossier City Council it was discovered that the personnel board section of the charter had been omitted in error.
 6. Mayor George Dement requested in a letter dated June 4, 2003, that the charter review commission reconvene to consider the omitted personnel board section of the charter and to reconsider the annual adjustments to water and sewer rates included in the recommended revisions.
 7. A meeting of the charter review commission was reconvened on June 23, 2003 where the proposed revisions to the charter, submitted in November of 2001, were modified by adding the personnel board section to the proposed revisions and a 2.75% annual adjustment for water and sewer was deleted from the utility section of that proposed revision.
 8. As of this date, the full text of the proposed revisions to the charter have never been published.
Thus, you ask our opinion on the following questions:
 (1) May the charter review commission make changes to the proposed revisions to the charter after the expiration of the 18-month time period set forth in La.R.S. 33:1395.1?
 (2) May the proposed revisions to the charter, including those amendments made on June 23, 2003, now be published and an election called for the citizens to vote on the proposed revisions to the charter?
The Bossier City Charter was adopted at an election held on November 2, 1976 and therefore, it is considered a post-1974 charter, subject to the general laws of this state. Thus, R.S. 33:1395-1395.6 govern this matter.[1]
LSA-R.S. 33:1395.4 provides that the charter shall provide the method and frequency of amending the charter, and R.S. 33:1395 provides that the method to be used is the charter commission. The Bossier City Charter provides for charter amendments in Chapter 12. "Amendments or proposed changes to the charter must be through a citizens Charter Review Commission [which] shall develop proposed amendments as soon as feasible, but not later than eighteen months after being formed." [Sec. 12.02]
Appointments to the commission in this matter were made on May 16, 2000. Thus, the eighteen month period in which the commission members were to submit the proposed amendments to the charter ended on or around November 16, 2001, with the formal proposal made by the commission on November 20, 2001 to the Bossier City Council.
The Bossier City Charter does not provide for an expiration of the commission members' term, but it appears that the intent is for the members to serve no longer than eighteen months. This is consistent with R.S. 33:1395.1, which provides an eighteen-month time period for commission members who are drafting an initial charter.
The council is mandated by its charter to submit any amendment as recommended by the charter review commission to the electors of the city, Sec. 12.04, as well as by general law, R.S. 33:1395.4, which states that "the proposed changes in the charter shall be approved by a majority of the electors of the municipalities or parish as provided by ArticleVI, Section 5 of the Louisiana Constitution of 1974." [Emphasis added]. The language of the charter, however, is not specific as to when the council shall submit a charter amendment, except in the case of an amendment proposed by petition of the electors. In that case, the special election is to be called no less than ninety (90) days, nor more than one hundred twenty (120) days after the receipt of the registrar's certificate of sufficiency of the petition, or on the next election date authorized by law. Thus, it appears that the intent of the charter is for an election to be scheduled as soon as possible according to law.[2].
In response to your first question, we are unaware of any provision of law [or your charter] which allows a charter commission to make changes to the proposed revisions to the charter that they authored after submission of the proposal to the council and the expiration of their term, as is the case here. The charter reads, "the council shall submit any amendment or amendments as recommended by the Charter ReviewCommission to the electors of the city." Sec. 12.04 [emphasis added]. Thus, it is our opinion that once the charter review commission has submitted its amendments to the council, the council is required to submit same to the electors.
In response to your second question, it is clear that the general law and the charter mandate submission of the proposed amendments to the electorate, as discussed above. Even though it has been three (3) years since the charter review commission submitted the amendments to the council, it is the opinion of this office that the revisions, as proposed by the charter review commission on November 20, 2001, must be published and submitted to the voters at the next available election under R.S.18:402(F). It would be contrary to the intent of the general law and the charter to allow the council to simply not submit the proposal now because of the passage of time, and thus, breach its duty as required by law.
With regard to the matters alleged to be omitted in error and the proposed modifications for water and sewer, we are of the opinion that a new charter review commission would need to be appointed to address these matters, if desired.
We hope this opinion provides you with information and guidance with regard to the proposed revisions to the Bossier City Charter.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _______________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;jnp;mjb Enclosure
[1] See, Attorney General Opinion No. 03-110(A), copy enclosed herein, which explains how R.S. 33:1395-1395.6 applies to a post-1974 home rule charter.
[2] R.S. 18:402(F) provides election dates for the submission of questions on the ballot.
OPINION NUMBER 03-0110(A)
August 12, 2003
71-1-B MUNICIPALITIES — Home Rule Charter
Clarifies Attorney General Opinion No. 81-270. Reaffirms Attorney General Opinion No. 03-110, which concluded that a charter commission is required by our constitution and state laws for the amendment of a parish home rule charter enacted after the 1974 constitution.
Hon. Camille A. "Cam" Morvant, II District Attorney 17th Judicial District, Parish of Lafourche 406 West Third Street P. O. box 431 Thibodaux, LA 70301
Dear Mr. Morvant:
Upon your request, we have reviewed our opinions, numbers 03-110 and 81-270, to determine if there is an actual conflict in our legal opinions on the subject of whether a charter commission is necessary to amend a home rule charter.
Attorney General Opinion 81-270 was written to the City of Shreveport, whose charter pre-dates the 1974 Louisiana Constitution. The opinion is misleading in that it states that the city operates under a home rule charter adopted in 1978. The City of Shreveport adopted amendments to its charter in 1978, but its initial charter was adopted in 1950. Thus, the fact that the City of Shreveport is a pre-1974 home rule charter government is a major distinction between it and a post-1974 home rule charter, such as the one in opinion no. 03-110 and in your interest, the Lafourche parish government home rule charter, which was adopted in 1978.
Pursuant to LSA-Const. Art. VI, § 4 (1974), the City of Shreveport is an existing charter which is authorized to amend its charter as provided by its charter[1]:
§ 4. Existing Home Rule Charters and Plans of Government
 Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions. (Emphasis added).
Thus, Attorney General Opinion No. 81-270 did not need to rely on R.S. 33:1395.4, as this statute was not enacted until 1977 and clearly did not pertain to a pre-1974 home rule charter government. While the reasoning of that opinion may have been flawed, the ultimate conclusion that the Shreveport City Charter could be amended as provided for in its charter [as under Art. VI, § 4] was correct. Thus, Attorney General Opinion No. 81-270 should be understood only in light of how it is correct for a pre-1974 charter.
Now, for a post-1974 charter, we reaffirm our opinion, No. 03-110. In this opinion we reviewed the constitutional convention debates to determine whether the delegates meant for a charter commission to be appointed or elected to not only propose a charter, but to also amend a charter. We concluded that the delegates understood the present wording of Art. VI, Sec. 5 to mean that a charter commission must either be appointed or elected in order for an amendment to a post-1974 charter to be prepared before being submitted to the voters for their approval or rejection. "The verbatim transcripts of the convention proceedings at which the constitutional provisions were drafted, are considered as valuable aids, and should be given some weight, in determining the purpose, intent and consequent meanings of the provisions. See NewOrleans Firefighters Association v. Civil Service Commission of the Cityof New Orleans, 422 So.2d 402, 407 (La. 1982)." Lafourche Parish Councilv. Autin, 648 So.2d 343, 351-352 FN12, 94-0985 (La. 12/9/94). Those provisions of the constitutional convention debates will be reproduced herein for your review and information:
 Amendment Mr. Poynter Amendment sent up by Delegate Jenkins.
 Page 4, at the end of line 3, page 4 at the end of line 3, add the following:
 `In addition, a proposal to adopt, amend or repeal a home rule charter may be made by the governing authority or by petition of at least ten percent of the electors or ten thousand electors, whichever is the lesser, of the governmental subdivision or subdivisions affected thereby.'
Explanation
 Mr. J. Jackson Mr. Chairman, ladies and gentlemen of the convention, you adopted, I guess about three or four amendments ago, allowing for ten percent or ten thousand of the people, registered voters, to make a proposal to create a charter commission to amend, repeal or modify as such.
 Mr. Jenkins came over to me. He said he had to leave. I said, `I'll try, Mr. Jenkins.' But Mr. Jenkins' concern is this: that what we did by the adoption of the Bergeron-Jackson amendment is to not offer a proposal before the electorate that will go to the ballot and just offer a proposal to have a charter commission to draw up something.
And his concern was that we ought to have the alternative, that we ought to have ten percent or ten thousand people to offer a proposition that will be placed on the ballot. And that is the gist of the Jenkins amendment as explained to me.
 If you read the committee proposal and the way we amended it, it just said ten thousand or ten percent to have a charter commission to do it. Now what if the people want to propose one directly to the ballot? We didn't provide for that kind of mechanism, and this attempts to correct the situation.
Questions
 Mr. Kean Mr. Jackson, as I understand it, even though the people of a particular municipality or parish might want to put into their local charter five percent, this would mean you would have to have ten percent.
 Mr. J. Jackson No, no, no, Mr well, that holds true for the last amendment if we follow your rationale. But the only thing it attempts to do is to allow ten percent or ten thousand, and we recognize that because of the problems that exist with present charters to allow the people to make a direct proposition to be placed on the ballot. We had some reservations on the right that we were putting in, we allowed for a charter commission to do it; his reservation was that he did not what if the charter commission did not come out with the basic concepts of what the people wanted? Presently, right now, even in the city of Orleans, and I understand it's in Shreveport, ten thousand people can petition the city council to place a thing on the ballot. It doesn't have to go through the process of having a charter commission to review it, to make a determination whether or not it's going to go on the ballot. As I have talked to Mr. Bergeron, we thought when we introduced our amendment that it was all-inclusive, but evidently there was that error.
 Mr. Kean The thing that disturbs me, Mr. Jackson, is in terms of a smaller municipality, we will say, that has a population of five thousand. As I read this, five hundred people could call an amendment, call an election for, or require an election to be held. Don't you think that could lead to a number of successive efforts to amend, at considerable expense, unless you put some provision in here that you couldn't do it more often than a certain length of time?
 Mr. J. Jackson Mr. Kean, I would say I could somewhat go along with your argument if, in fact, that argument holds true for the amendment that we adopted. I am not as concerned with the fact, and I think it's been brought out, that we have not had the kinds of amendments placed on the ballot. This offers citizens, if you want to talk about the right of a people to petition this government, to do it. I think that your concerns or maybe the concerns that I understand that you echoed about the amendment we are adopting, is only applicable, except that we are saying that in this situation, do the people have a right to get ten percent or ten thousand to pose the proposition on the ballot? I think in terms of the cost involved, Mr. Kean, I think it's brought out that that has not been a regular practice.
 Mr. Lanier Mr. Jackson, as I read this thing, it says `A proposal to adopt, amend, or repeal a home rule charter may be made by the governing authority or by petition of at least ten percent of the electors or ten thousand electors, whichever is lesser.' Does that mean there is a straight shot deal if ten thousand people sign a petition, it goes on the ballot, and you've got to vote on it, to repeal a whole home rule charter?
 Mr. J. Jackson To repeal, amend or modify presently, Mr I stand corrected from somebody from my own city, but presently that's the provision that we have in relationship to getting propositions on the ballot, which would be considered as an amendment to the charter. Not only, Mr. Jenkins raised to me the concerns that we said that we would people would have to go through this process that we did, go to a charter commission, then they in turn would have to review as such before whether or not it goes on the ballot. All I'm saying is that if it doesn't as I understand it in the existing charters, and I stand corrected, that is presently allowed. I don't know if the percentage is I know in Shreveport it's ten and in New Orleans it's ten thousand. If we had done that, we would have done an amendment to the charter. What I'm saying to you, Mr. Lanier, is that we have a straight shot, or the citizens of the city of New Orleans has a straight shot to put the proposition, you know, to the voters. Now, I think and you know the same kinds of concerns that have exhibited by the votes, you know the voters have not been readily enough to accept constitutional amendment, so I don't think that the scares there that they are going to accept to, if somebody put a proposition to repeal the charter of New Orleans, that they are going to adopt it.
 Mr. Lanier The thing I'm getting at, Mr. Jackson, is this Section (B), as I read it, provides for calling an election to elect a commission to prepare and propose a charter or alternate charter. As I read what you are doing, this doesn't have anything to do with the charter commission at all. Is that right?
 Mr. J. Jackson No, it has to do with the charter. What if I wanted to make a proposition before the voters?
 Mr. Lanier I mean the charter commission.
 Mr. J. Jackson No, this does not talks about the charter commission. It means that, you know, if we want to make, or the citizens of any parish wants to make an amendment to their charter, an amendment. I doubt very seriously, Mr. Lanier, if you're going to get somebody to try to get ten thousand signature to repeal the charter of Orleans, or Shreveport, or Jefferson. But, if they want to make an amendment, they don't necessarily have to go before their charter commission, who's going to revise and review it. They can use this access. I know, as a matter of practice, and I would ask that if anybody from the City of New Orleans want to disagree with it, that presently that method is presently used.
 Mr. Lanier But, doesn't your proposal apply to adoption and repeal, as well as amendment?
 Mr. J. Jackson I think that in when we talk about the adoption and repeal and modification as a charter commission having, you know, as a mechanism, we got to use that kind of language. I'm not suggesting that people are going to repeal it. But, I think our committee has used in every case, `modified, repeal or amend' — even among within the committee proposal.
 Mr. Segura Mr. Jackson, it's just that I don't understand, and it looks like I'm reading one thing and you're saying something else. I read this to say that a home rule charter may be made by that `in addition to a proposal to adopt, amend, or repeal, a home rule charter may be made by the governing authority or by petition.' Does that mean that the governing authority, say the city council of a city who has a home rule charter, could amend it just by them passing a resolution?
 Mr. J. Jackson They could put the proposition on the ballot, as it presently done, particularly in our city. They can do it; I think we got two ways you can do it. You can do it by the city council doing it, or you could do it by direct petition from the people.
 Mr. Segura But, it sounds like the city council doesn't even have to go to the vote of the people to amend the charter. Am I right or am I wrong?
 Mr. [J.] Jackson Well, that as I understand, Mr. Jenkins, I understand that the wording of it it has to go to a vote of people because the charter itself says that any amendments to the charter must be approved by a vote of the majority electors of the people.
 Mr. Segura I'm not an attorney, but I think I would look at that.
Mr. [J.] Jackson O.K.
Further Discussion
 Mr. Perez Mr. Chairman and ladies and gentlemen of the convention, as you know, when Representative Jackson came up before, we went along and did not seriously object to what he wanted to do previously. But this particular amendment is bad business from the standpoint that if the people of an area have adopted a home rule charter, which provides a method by which that charter will be amended, what we would be doing, in effect, is saying that the people of the state are going to vote upon the method that the people of New Orleans have decided that they would use for the amendment of their charter. Now again, I repeat what I've said earlier, it seems to me that the main reason we have come up to this convention is to try to avoid these situations where people all over the state have to make decisions as to what should happen one locality, whether it be Shreveport, New Orleans or otherwise. I, therefore, urge that you reject the amendment.
[Previous Question ordered.]
Closing
 Mr. J. Jackson In that Mr. Perez raised the point that you are going to have people throughout the state, you know, again voting on amendments that affect a particular area. I just say that if you look at the amendment it says `whichever is lesser of the governmental subdivision or subdivisions affected thereby.' Now, I don't know how affected a subdivision `a governmental subdivision affected by' is going to mean that the people of Shreveport or Lake Charles are going to be voting on that. I want to suggest to Mr. Lanier in terms of his comment that presently under the charter of the city of New Orleans, the people have a direct petition to put any issue on the ballot before the voters without necessarily going through the process of the city council having to print a charter revision commission. So, I don't see based on objections that I've heard, I think that (1) say it's by the subdivision affected and (2) that this is not new because I know of one charter in the city of New Orleans that allows it and (3) that it's the basic fundamental proposition of the people to place by petition any issue, whether it's the charter or rather it's some particular issue whether, you know, before the voters. I don't think that there is that serious objection as Mr. Perez says. I ask you for your favorable adoption of this amendment.
[Amendment rejected: 40-67. Motion to reconsider tabled.]
 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vo. 7, pp. 1375-1377. [Emphasis added].
Thus, it is our opinion that the intent of the language of LSA-Const. Art. VI, § 5 (1974)[2] was to authorize the adoption and amendment of a home rule charter by way of a charter commission and not by council ordinance or initiative petition by the people.
Your letter states, "After reviewing the language contained in La. Constitution Art. VI Section 5(A) which states that a governing authoritymay appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission', the language contained in R.S. 33:1395.4 which states that `the method and frequency of amending the charter shall be provided in said charter' and the language contained in Attorney General Opinion No. 81-270, we concluded that Charter amendment could be proposed by a committee and submitted to the Council for ultimate submission for approval to the voters as provided for in the Charter." First, we are of the opinion that the use of the permissive language may in the constitutional article is for authorization of a local governmental subdivision to draft, adopt or amend a home rule charter, rather than a mandamus that they do so. Second, we found that LSA-R.S. 33:1395-1395.6 as enacted in 1977 did not apply to parish home rule charters, just municipal home rule charters:
§ 1395. Method of proposing home rule charter
 When the clerk of a municipality is presented with a petition for election of a home rule charter commission as provided in Article 6, Section 5(B) of the Louisiana Constitution of 1974 signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected municipality, as certified by the registrar of voters, the governing authority of the municipality shall call an election to elect a commission to prepare and propose a home rule charter or alternate charter. The election of the commission shall be called by the governing authority of the municipality and held pursuant to and in accord with the election law of the state not more than one hundred eighty days and not less than one hundred twenty days after the petition is present to the clerk. (Emphasis added).
Louisiana Acts 1977, No. 145. This act also enacted R.S. 33:1395.4 to provide that the method and frequency of a charter amendment shall be provided in the charter, which also only applied to municipalities in 1977, as follows:
§ 1395.4. Amendment of charter
 The method and frequency of amending the charter shall be provided in said charter. The charter shall provide a procedure in which the local governing authority or resident of the municipality may propose changes in the charter. The proposed changes in the charter shall be approved by a majority of the electors of the municipalities as provide by Article VI, Section 5 of the Louisiana Constitution of 1974.
Louisiana Acts 1980, No. 703 amended and reenacted R.S. 33:1395-1395.6 and repealed R.S. 33:1381-1390, to provide the major change in application to parishes and includes the amendment of a charter under the charter commission method, as follows:
§ 1395. Method of proposing home rule charter
 A. Any parish or municipality may draft, adopt, or amend a home rule charter. The method to be used is the charter commission, which can either be appointed by the governing body or elected by the people.
B. * * *
And Section 1395.4 on amendment of a charter did not change in the 1980 amendment. Thus, it is our opinion that the only interpretation of R.S.33:1395 and 1395.4 which is consistent with the constitutional language of Art. VI, § 5 is that the method of amending the charter which is required to be provided in the charter under § 1395.4 must include the charter commission, but can vary insofar as whether the charter commission is elected or appointed, with the exception of when a petition is presented for the election of a charter commission pursuant to § 1395(B) and Art. VI, § 5(B). In other words, because of the explicit terms of Art. VI, § 4, pre-1974-constitution home rule charters can be amended by any of the methods and procedures already provided for in such charter and R.S. 33:1395.4 applies to pre-1974-constitution home rule charters, but the statute does not apply to post-1974-constitution home rule charters because the wording of Art. VI, § 5(A) prevents it from so applying.
Since these laws, R.S. 33:1395-1395.6, did not apply to parish home rule charters until 1980, the next issue that needs to be addressed is how a parish home rule charter enacted pursuant to LSA-Const. Art. VI, § 5 (1974) could amend its charter. It seems obvious that the interpretation that we have made in Atty.Gen.Op. No. 03-110, based on the constitutional convention debates, is further supported when this issue is addressed. For example, LSA-Const. Art. VI, § 5(A) (1974) provides, "[a]ny local governmental subdivision may draft, adopt, oramend a home rule charter in accordance with this Section." Because we are of the legal opinion that the following sentence of that constitutional article, "The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission", is the method provided by this Section for not only adopting a charter but also for amending a charter, there was a way for a parish home rule charter enacted pursuant to this 1974 constitutional provision, but before the 1980 enactment of R.S. 33:1395-1395.6, to amend its charter, i.e., by a charter commission. If this constitutional provision was not given this logical interpretation, there would not have been any method provided for the amendment of a parish home rule charter that fell into this unique category [enacted pursuant to the 1974 constitution but before the 1980 enactment of R.S. 33:1395-1395.6].
And finally, in response to your conclusion that a charter amendment could be proposed by a committee and submitted to the council for ultimate submission for approval to the voters as provided for in the charter, we believe Attorney General Opinion No. 97-242 already disagreed with this type of action. In opinion no. 97-242, the Lafourche Parish Council questioned whether they could revise proposed amendments of a charter review committee that they formed and appointed to formulate amendments to the charter. Our conclusion was that pursuant to R.S.33:1395.1, which provides for the charter commission membership, the council was prohibited from altering the proposed amendment in any way. The opinion did not address the legality of the charter review committee versus a commission, but perhaps assumed that the committee was properly formed under the law as a commission, but was referred to as a committee rather than a commission. If the council is interested in making changes, they can always appoint themselves to the charter commission, as discussed in Attorney General Opinion No. 92-222. We enclose a copy of these two opinions, numbers 97-242 and 92-222, for your information and review.
We are also enclosing a copy of Attorney General Opinion No. 01-203, which is consistent with our opinion in No. 03-110 and our conclusion herein. Opinion No. 01-203 concluded that although the Lake Charles home rule charter pre-dates the 1974 constitution and therefore is governed by Art. VI, § 4 [existing charter may be amended as provided in the charter], the specific language of the charter provides for the charter to be amended by majority vote of the qualified electors at a referendum pursuant to applicable state law, and then concluded that the applicable state law, R.S. 33:1395, permits the Lake Charles governing authority to appoint a charter commission and limit its review to only those areas of concern delineated by the city council.
In our telephone conversations on this matter, you have stated that you believe many parishes, probably post-1974 charter parishes, amend their charter without using a charter commission. While that might be the case, it can not change our legal interpretation of the constitution and laws on this subject matter, but that is not to say that such amendments are illegal per se. In general, there is a presumption of validity to those amendments enacted without the use of a charter commission, at least until they are challenged in court, and only a court can strike them down as invalid. That is not to say, however, that we are not in agreement with you that not every amendment to a home rule charter seems significant enough to warrant the election or appointment of a charter commission, but this issue is one that can only be appropriately addressed by the legislature by way of constitutional and statutory amendments.
Hoping that the results of our "homework" have provided you with a succinct, although not brief, legal opinion which addresses all of your questions, we remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb Enclosures
Date Released: August 12, 2003
[1] See also, Charter Commission of the City of Alexandria v. Karst,272 So.2d 348, 352-353 (La. 1973), which found that under the 1921 constitution, an amendment to a charter was required to be made in the same general manner as the adoption of the charter.
[2] § 5. Home Rule Charter
Section 5.(A) Authority to Adopt; Commission. Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with thisSection. The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.
(B) Petition to Elect Commission. The governing authority shall call an election to elect such a commission when presented with a petition signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected subdivision, as certified by the registrar of voters.
(C) Adoption; Amendment; Repeal. A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.
OPINION NUMBER 92-222
April 24, 1992
78 — Officers — Dual Officeholding
La. Cont. Art. 6 Sec. 5
R.S. 33:1395
Governing authority of local subdivision may appoint themselves to a charter commission.
W.J. LeBlanc, Jr., Esq. Gretna City Attorney 603 Lafayette Street Gretna, Louisiana 70053-6045
Dear Mr. LeBlanc:
Your inquiry of recent date addressed to the Attorney General has been directed to me for attention.
I understand your question to be as follows:
 Whether certain elected officials such as the Mayor, Board of Aldermen, Chief of Police, etc. can be appointed to a charter commission to draft a home rule charter.
Your attention is first directed to the exemption provisions of the Louisiana Dual Officeholding and Dual Employment Law contained in R.S. 42:66 which reads in part as follows:
 A. Nothing in this part shall be construed to prohibit any of the following classes of officials or employees from serving in other offices or employment;
 (3) Delegates to and employees of any constitutional convention or any charter commission.
It is assumed that the officials named in your inquiry are not prohibited from serving on a charter commission by any provisions in an already-existing home rule charter. Under that assumption the provisions of the dual officeholding law would not be applicable in light of the exemptions set forth in R.S. 42:66 A(3).
Further, your attention is now directed to Article 6 Section 5 of the Louisiana Constitution which reads as follows:
Section 5 — Home Rule Charter
 (A) Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend the home rule charter in accordance with this section. The governing authority of a local government subdivision may appoint a commission to prepare and propose a charter or an alternate charter or it may call an election to elect such a commission. (emphasis added)
Pursuant to the above cited constitutional provision the legislature enacted R.S. 33:1395 et seq., particularly R.S. 33:1395.1 entitled "Charter commission, membership, number, term, preparation, submission and publication of charter" which provides in part:
 A. The commission shall consist of not less than seven nor more than eleven members who shall be elected or appointed in the manner provided by the municipality or parish . . .
* * *
Therefore, absent any limitations on the power of the governmental authority to appoint a charter commission under the Louisiana Constitution in Article 6, Section 5 and the statutory provisions contained in R.S. 33:1395 et seq., it is the opinion of our office that public officials may be appointed as members of a charter commission.
If you have any further questions relative to this matter, please contact our office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________________ HARRY H. HOWARD Spec. Asst. Attorney General
HHH:rmd:0108V
OPINION NUMBER 97-242
June 16, 1997
71-1-B MUNICIPALITIES
LSA-R.S. 33:1395.1
State law prohibits a local authority or municipality from altering a charter proposed by a duly appointed charter commission.
Ms. Sheila B. Boudreaux Lafourche Parish Council P.O. Drawer 5548 Thibodaux, LA 70302
Dear Ms. Boudreaux:
We are informed that the Lafourche Parish Council formed and appointed a charter committee entitled the Charter Review Committee to formulate amendments to the parish home rule charter. The Committee in fact accomplished this task and submitted the proposed amendments to the Council for review. A question has arisen concerning the authority of the Council to revise the amendments; it has been suggested that the Council must adopt the amendments as written.
The last statement above is an accurate legal conclusion, as LSA-R.S.33:1395.1 provides:
 § 1395.1 Charter commission, membership, number; term; preparation, submission, and publication of charter
 A. The commission shall consist of not less than seven or more than eleven members who shall be elected or appointed in the manner provided by the governing authority of the municipality or parish. Each member of the commission shall hold office until a charter is either adopted or rejected by the registered voters of the municipality, as provided hereafter, and any vacancies in the commission shall be filled by appointment of the remaining members. The members of the commission shall take office immediately after election or appointment and shall propose the charter and submit it to the governing authority of the municipality within eighteen months thereafter. The proposed charter shall not be altered or changed in any way by the governing authority of the municipality.
 B. The terms of charter commission member shall expire with either the adoption or rejection of the charter by the voters. In situations where no charter has been drafter by the end of the eighteen-month time period, members' terms shall automatically expire.
 C. The full text of the proposed charter shall be published once in the official publication of the municipality or parish within thirty days after its submission to the local governing authority of the municipality or parish. Responsibility for publication rests with the governing body affected. If a parish and a municipality are involved, publication shall be by the parish in its official journal. (Emphasis added).
Accordingly, the Lafourche Parish Council is prohibited from altering the proposed amendments in any way.
Should you have further questions regarding this matter, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams