# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTOPHER JAMES HARNER,

      Defendant-Appellant.

UNPUBLISHED
June 20, 2017

No. 331122
Berrien Circuit Court
LC No. 2015-002455-FH
          2015-002454-FH
          2015-002501-FH

---

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant Christopher James Harner was convicted by a jury of fourth-degree criminal sexual conduct[1] (CSC-IV) (sexual contact with person at least 13 and under 16 years old), accosting a minor for immoral purposes,[2] and seven counts of third-degree criminal sexual conduct[3] (CSC-III) (sexual penetration with person at least 13 and under 16 years old). He was sentenced to 183 days' imprisonment (time served) for the CSC-IV conviction, 183 days' imprisonment (time served) for the accosting a minor for immoral purposes conviction, and 60 to 180 months' imprisonment for each count of CSC-III. Harner appeals as of right. We affirm.

This matter arises from allegations of sexual activities occurring between Harner and three teenage girls. In November, 2014, Amy Welch allowed Harner to move into her Coloma Township apartment where she resided with her daughters. Harner quickly developed close relationships with Welch's eldest daughter, 15-year-old CS, as well as two of CS's friends: 14-year-old RA and 13-year-old MG. At trial, each of the girls testified that they developed romantic feelings for Harner in the following months and described the sexual activities they engaged in with him.

---

[1] MCL 750.520e(1)(a).

[2] MCL 750.145a.

[3] MCL 750.520d(1)(a).

## I. SUFFICIENCY OF THE EVIDENCE

Harner first argues that the prosecution failed to present sufficient evidence to support his convictions. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo.[4] We view the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt."[5] In making this determination, this Court must not interfere with the factfinder's role of "determining the weight of the evidence or the credibility of witnesses."[6]

Harner's argument rests in large part on his contention that the victims lacked credibility because they frequently changed their stories, were motivated by feelings of jealousy or romantic affection, and were not physically examined to corroborate their allegations of sexual penetration. This argument is unpersuasive because it is well-settled that the Court will not interfere with a jury's determinations regarding witness credibility.[7] The jury convicted Harner after hearing significant testimony regarding the nature of the victims' relationships with him and the instances in which they lied about the events surrounding the offenses. It is clear that the jury chose to credit the victims' testimony despite the concerns raised by Harner, and it is not for this Court to second-guess the jury's findings in this regard.

Moreover, a complainant's testimony regarding the defendant's sexual acts can be sufficient evidence to sustain a criminal sexual conduct conviction.[8] Harner was convicted of seven counts of CSC-III based on sexual penetration with a person who is "at least 13 years of age and under 16 years of age."[9] The prosecution presented sufficient evidence to sustain each of these convictions through the testimony of CS and MG. CS was 15 years old during the relevant time frame and testified that she engaged in vaginal intercourse with Harner twice in Coloma. Likewise, MG said she had sex with Harner at least six times and recalled two specific instances that occurred in Coloma and two instances that occurred after Welch, her daughters, and Harner moved to Baroda in December, 2014. She also described an act of cunnilingus that took place in Coloma and agreed that she performed fellatio on Harner in his car. At the time of each of these acts, MG was 13 years old.

---

[4] *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014).

[5] *Id.*, quoting *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (quotation marks omitted).

[6] *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

[7] *People v Bailey*, 310 Mich App 703, 713-714; 873 NW2d 855 (2015).

[8] *Id.* at 714. See also MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g.").

[9] MCL 750.520d(1)(a).

Harner's conviction for CSC-IV arose under MCL 750.520e(1)(a), which requires proof that the defendant engaged in sexual contact with a person "at least 13 years of age but less than 16 years of age, and the [defendant] is 5 or more years older than that other person." The term "sexual contact" means

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for [other enumerated purposes].[10]

With respect to this conviction, Harner argues that there was no evidence that he touched RA for a sexual purpose. "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime."[11] RA testified that while she was lying on a couch with Harner and CS, Harner touched her vagina and chest over her clothing. She believed that Harner was attempting to undo the button on her shorts and placed her hand over the button to prevent that result. Viewing this testimony in the light most favorable to the prosecution, Harner's contact with RA's intimate parts can reasonably be construed as having been for a sexual purpose.

Harner argues that the prosecution failed to present evidence that he used force or coercion to achieve sexual contact with RA. But, as already noted, Harner was charged and convicted under MCL 750.520e(1)(a), which criminalizes sexual contact based on the age differential between the defendant and complainant, regardless of whether the defendant used force or coercion in the offense.[12] Here, there was evidence that RA was 14 years old when the sexual contact occurred and Harner, at the age of 24, was more than 5 years older than her. Accordingly, the lack of force or coercion is irrelevant to Harner's challenge to the sufficiency of the evidence.

Finally, Harner's conviction for accosting a minor for immoral purposes was also supported by sufficient evidence. A defendant may be prosecuted for this offense under two alternative theories—"one that pertains to certain acts and requires a specific intent and another that pertains to encouragement only and is silent with respect to *mens rea*."[13] While the evidence in this case may have been sufficient to support Harner's conviction under either theory, it was especially persuasive in the context of an encouragement theory. Under an encouragement theory, the prosecution must prove beyond a reasonable doubt that the defendant "(1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a

---

[10] MCL 750.520a(q).

[11] *Kanaan*, 278 Mich App at 619.

[12] Compare MCL 750.520e(1)(a) (requiring age differential) with MCL 750.520e(1)(b) (requiring force or coercion).

[13] *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011).

proscribed act."[14]  Proscribed acts include "an immoral act," "an act of sexual intercourse," "an act of gross indecency," or "any other act of depravity or delinquency."[15]  RA testified that Harner repeatedly requested nude photographs of her intimate areas.  She eventually "caved in" and sent him a photograph of her naked "lower front region" using Snapchat.  From this testimony, the jury could reasonably conclude that Harner encouraged then 14-year-old RA to commit an immoral or grossly indecent act, i.e., distributing nude photographs.[16]  It is irrelevant that no such photographs were discovered on Harner's cellphone because his repeated requests for nude photographs, and not his receipt thereof, formed the basis for the offense.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Harner argues that he was denied the effective assistance of counsel for several reasons.  Ineffective assistance of counsel claims present a mixed question of fact and constitutional law.[17]  The lower court's findings of fact are generally reviewed for clear error, while its rulings on questions of constitutional law are reviewed de novo.[18]  However, because Harner failed to preserve this issue by requesting a new trial or *Ginther*[19] hearing in the trial court,[20] our review is limited to errors apparent from the record.[21]

To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."[22]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[23]  This Court presumes that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions.[24]  Accordingly, the defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy."[25]  "Because the defendant bears the burden of demonstrating both deficient

---

[14] *Id.*

[15] MCL 750.145a.

[16] See, e.g., *People v Gaines*, 306 Mich App 289; 856 NW2d 222 (2014) (charges arising from request for nude photographs from minor complainants).

[17] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[18] *Id.*

[19] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[20] See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

[21] *Id.*

[22] *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

[23] *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

[24] *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

[25] *Trakhtenberg*, 493 Mich at 52.

performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim."[26]

## A. JURY SELECTION

Harner claims that defense counsel's performance during jury selection and his decision to forego questioning a juror who admitted having an indirect connection with one of the victims amounted to ineffective assistance. Each of these arguments must fail, as Harner has not demonstrated that defense counsel's performance was objectively unreasonable.

A criminal defendant has the right to be tried by a fair and impartial jury.[27] MCR 2.511(D) sets forth several reasons that a party may challenge a potential juror for cause, which are generally premised on one of two principles: either the individual is not statutorily qualified to serve as a juror, or the individual is biased such that his or her ability to render a fair and impartial verdict would be impaired.[28] However, "[j]urors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence . . . ."[29] In considering a claim of ineffective assistance of counsel based on an attorney's performance during jury selection, this Court has observed the following:

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we "cannot see the jurors or listen to their answers to voir dire questions." For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. "A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury."[30]

During voir dire, Juror 5 indicated that her mother had been a victim of sexual abuse but affirmatively stated, "I could be objective," and, "I could be fair and impartial." Harner contends that defense counsel was ineffective for failing to challenge Juror 5 for cause, where the juror merely indicated that she *could* be impartial, without specifically stating that she *would* be impartial. But this semantic argument rests on a strained reading of Juror 5's responses. When read in context, it is clear that Juror 5's remarks were not designed to be deceptive or express reservations about her ability to serve as an impartial juror. "It is the policy of this state that prior impressions or opinions, not positive in character, do not mandate disqualification."[31] Additionally, a potential juror's presumption of impartiality remains "if the juror can lay aside

---

[26] *Carbin*, 463 Mich at 600.

[27] *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997).

[28] *People v Eccles*, 260 Mich App 379, 382; 677 NW2d 76 (2004).

[29] *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001).

[30] *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (citations omitted).

[31] *People v Jendrzejewski*, 455 Mich 495, 517-518; 566 NW2d 530 (1997).

his impression or opinion and render a verdict based on the evidence presented in court."[32]  Juror 5 indicated that she could be objective, fair, and impartial, and defense counsel had the opportunity to assess her demeanor and draw conclusions regarding the credibility of her statements.  On this record, Harner has failed to establish that defense counsel's failure to challenge Juror 5 was anything other than sound trial strategy.

Another prospective juror characterized his ability to be fair and impartial as "[q]uestionable" and commented, "Just by hearing how many counts, I can't see how you really need any more evidence."  After further questioning, defense counsel successfully challenged the potential juror for cause.  Harner takes issue with defense counsel's failure to object to the potential juror's opinion or ask the remaining venire if any of its members held similar beliefs.  However, it is clear that defense counsel's handling of these voir dire responses was objectively reasonable.  Defense counsel asked follow up questions which highlighted the incompatibility of the potential juror's opinion with the court's initial instruction that the charges against Harner could not be considered as evidence of guilt.  Moreover, by having the potential juror excused from the panel, defense counsel emphasized to the remaining venire that the expressed views were unacceptable in the context of a criminal trial.

Harner also contends that defense counsel was ineffective because of the manner in which he handled a midtrial disclosure from an unidentified juror.  With respect to this issue, all that can be discerned from the record is that a juror advised the court bailiff that she worked at Riverwood, a mental health facility where MG had attended therapy, but had not encountered MG there.  This disclosure was apparently prompted by testimony from MG's mother, in which she briefly referred to Riverwood.  The court opined that the matter did not need to be explored further and both the prosecution and defense counsel agreed.  While Harner suggests that defense counsel should have objected when the court decided against questioning the juror, he cannot establish that defense counsel's decision was objectively unreasonable.  Determinations regarding the makeup of the jury are inherently subjective and there are any number of reasons defense counsel may have decided not to inquire into the juror's disclosure.  Furthermore, MG's treatment at Riverwood was insignificant to the facts at issue in the trial and the juror did not report having any personal contact with MG or previous knowledge regarding her treatment.

## B.  PROSECUTORIAL ERROR

Next, Harner argues that he was denied the effective assistance of counsel when his attorney failed to object to instances of prosecutorial error.  We disagree.

Harner takes issue with two comments made by the prosecution during voir dire.  "The purpose of voir dire is to elicit enough information for development of a rational basis for

---

[32] *Id*. at 517, quoting *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961).

excluding those who are not impartial from the jury."[33]  Thus, questions and remarks that serve that purpose are appropriate.[34]

Harner contends that the prosecution misstated the burden of proof with the following remark: "The question for the jury in this case will be based upon what you hear in the courtroom, you know, what do you think happened and does that fit the law as the judge gives it to you."  Viewed in context, this remark was proper.  The prosecution was questioning a potential juror about her ability to set aside personal beliefs regarding the subject matter of the case, and clearly noted that the jury would be required to find facts from the evidence presented and apply those facts to the law provided by the court.  Moreover, the prosecution's remark was preceded and followed by appropriate instructions from the court regarding the prosecution's burden of proof, i.e., proof beyond a reasonable doubt.  Because the prosecution's remark was appropriate, defense counsel was not ineffective for failing to raise a meritless objection.[35]

Harner also argues that the prosecution contaminated the venire by referring to the prevalence of stories about "teen sexual behavior" and "sexting" in the media.  We disagree.  The prosecution was aware that it would introduce evidence that Harner communicated with RA through electronic means and that the communications were of a sexual nature.  It was, therefore, reasonable for the prosecution to inquire about the potential jurors' familiarity with the concept of "sexting" and related media coverage because it could have elicited information reflective of bias.  Once again, defense counsel was not ineffective for failing to raise a meritless objection.[36]

Next, Harner argues that defense counsel should have objected to the prosecution's manner of questioning MG and CS on direct-examination, which he contends involved the regular use of leading questions.  As an initial matter, we note that although this issue is raised in the brief on appeal submitted by Harner's appellate counsel as well as Harner's Standard 4 brief, only the Standard 4 brief points to specific instances of purported leading questions from the prosecution.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."[37]  Thus, to the extent that Harner takes issue with questions apart from those identified in his Standard 4 brief, he has abandoned review of that aspect of his claim of error by failing to adequately articulate his argument.

---

[33] *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (lead opinion by MALLETT, J.).

[34] See, e.g., *People v Dunham*, 220 Mich App 268, 270; 559 NW2d 360 (1996) (finding that voir dire remarks designed to identify bias regarding sexual abuse of a minor were proper in criminal sexual conduct case involving minor complainant).

[35] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

[36] *Id.*

[37] *People v Kevorkian*, 248 Mich App 373, 429; 639 NW2d 291 (2001).

With respect to the transcript passages quoted in Harner's Standard 4 brief, his argument lacks merit because the prosecution did not ask improper leading questions in these exchanges. The majority of the questions cited by Harner did not suggest the desired answer and, therefore, were not leading.[38] Furthermore, the Michigan Rules of Evidence do not strictly prohibit use of leading questions, but rather provide that "[l]eading questions should not be used on the direct examination of a witness *except as may be necessary to develop the witness' testimony*."[39] This Court has also held that "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses."[40]

To the extent that the prosecution's questions can be characterized as leading, defense counsel's failure to object was not unreasonable under the circumstances. It is clear from the record that CS and MG were both reluctant to testify. CS expressed her embarrassment at having to discuss her physical relationship with Harner and noted that it was "really complicated to talk about." Similarly, MG commented that she was nervous during her testimony and said she was "pissed off" by some of defense counsel's questions. Both witnesses were hesitant to use anatomical language, instead employing slang terms and euphemism that required clarification by the prosecution. Likwise, CS and MG both indicated that they did not remember certain matters they discussed in earlier proceedings, which prompted the prosecution to follow up with pointed inquiries about their earlier testimonies.[41] Given CS's and MG's obvious unease and professed lack of memory, the prosecution's occasional use of leading questions was appropriate because it was necessary to develop the testimony of the teenage victims. As such, defense counsel was not required to raise a futile objection.

## C. DISCOVERY

Next, Harner argues that defense counsel should have filed a motion to compel full disclosure of the prosecution's evidence at a point that would have allowed an adequate period to prepare for trial.[42] We disagree.

---

[38] *Black's Law Dictionary* (10th ed) (defining "leading question" as "[a] question that suggests the answer to the person being interrogated; esp., a question that may be answered by a mere "yes" or "no"); 1A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 18:24, p 365 ("A leading question is one which suggests or indicates the particular answer which is desired.").

[39] MRE 611(d)(1) (emphasis added).

[40] *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (involving 13-year-old victim of criminal sexual conduct).

[41] Questions of this sort are specifically authorized by the Michigan Rules of Evidence. See MRE 607 (providing that a party may impeach their own witness) and MRE 613 (allowing questions concerning a witness's prior statements).

[42] Although Harner labels this issue as a "Brady Rule Violation," presumably referring to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the essence of his argument

"Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[43] The prosecution provided the defense with "voluminous police reports" shortly after Harner's arraignment and defense counsel filed a formal request for additional discovery several months before the trial. At nearly every subsequent hearing, the ongoing exchange of discovery was discussed and it appears that the prosecution was cooperative in producing the requested discovery and that defense counsel was satisfied with the prosecution's efforts. It was not objectively unreasonable for defense counsel to refrain from filing a formal motion to compel under these circumstances, particularly when the court was already aware of the status of the parties' discovery and had regularly encouraged the prosecution to ensure that all discoverable materials were made available to the defense.

Furthermore, the focus of Harner's concern regarding outstanding discovery appears to be a recording that *may* have been made during his interview with Chief of Police Randel Pompey, which Harner maintained would have supported a motion to suppress evidence seized from his cellphone. But it is unclear from the record whether such a recording exists or whether it would contain proof that Harner's cellphone was searched without a warrant as he contends. To the contrary, Chief Pompey testified that he seized Harner's cellphone during an informal roadside interview, but only searched it after having obtained a warrant. The police report reflected a similar chain of events. Thus, even if we believed that defense counsel acted unreasonably in not moving to compel discovery, without any indication in the record that the recording truly existed or supported Harner's contention regarding the search, Harner cannot demonstrate that he was prejudiced by defense counsel's decision.

## D. MOTION TO SUPPRESS

Next, Harner argues that defense counsel was ineffective because he did not move to suppress evidence obtained from Harner's cellphone and misled the trial court regarding the basis for such a motion.[44] This argument lacks merit because, as already noted, the record does not suggest that Harner's cellphone was illegally searched. With respect to defense counsel's representations, after Harner sent an ex parte letter to the trial court concerning a motion to suppress, defense counsel advised the court that there was no basis to suppress the evidence obtained from Harner's cellphone because it was searched pursuant to a warrant. Although this explanation is at odds with Harner's version of the events, defense counsel cannot be faulted for failing to file a motion that was unsupported by the evidence. Importantly, Harner bears the burden of establishing the factual basis for his claim of error[45] and has yet to point to anything,

focuses on defense counsel's conduct, rather than an alleged suppression of evidence on the part of the prosecution.

[43] *Trakhtenberg*, 493 Mich at 52, citing *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks omitted).

[44] Harner labels this issue as a "Failure to Request a Walker Hearing," presumably referring to hearings conducted pursuant to *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965), but makes no argument regarding an involuntary confession.

[45] *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).

apart from his own unsubstantiated assertions, that would warrant suppression of the cellphone evidence. We will not find that a defendant was denied the effective assistance of counsel based on the failure to file a meritless motion.[46]

## III. SENTENCING

Next, Harner argues that he is entitled to resentencing pursuant to *People v Lockridge*[47] because offense variables (OVs) 4 and 10 were scored using judge-found facts and resulted in an increase in the sentencing guidelines range applicable to his CSC-III convictions. We disagree.

To preserve a claim that judicial fact-finding resulted in an increased mandatory minimum sentence, in violation of the defendant's constitutional rights, the defendant must object to the scoring of the statutory guidelines on that basis at the time of sentencing.[48] Defense counsel's objections at sentencing were not based on *Lockridge* grounds. Thus, this issue is unpreserved. An unpreserved claim of error under *Lockridge* is reviewed for plain error, "which requires a defendant to demonstrate not only that an error occurred, but 'that the error affected the outcome of the lower court proceedings.' "[49]

In *Lockridge*, our Supreme Court held that Michigan's statutory sentencing scheme violated the Sixth Amendment principles articulated in *Alleyne v United States*[50] by requiring a mandatory increase in a defendant's minimum-sentence range based on judicially found facts.[51] To remedy this problem, the Court severed the mandatory language in MCL 769.34(2) and (3), thereby rendering the sentencing guidelines "advisory only."[52] Since then, this Court has explained that "[t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range."[53] Thus, a defendant who was sentenced after *Lockridge* was decided on July 29, 2015, cannot establish plain error merely on the basis that the trial court engaged in judicial fact-finding to calculate the defendant's sentencing-guidelines score. Here, Harner was sentenced on December 14, 2015— over four months after the sentencing guidelines became advisory only. As such, the trial court's reliance on judicially found facts to score OVs did not mandatorily increase his minimum sentence, and Harner is not entitled to relief under *Lockridge*.

---

[46] *Ericksen*, 288 Mich App at 201.

[47] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[48] *Id*. at 392.

[49] *People v Stokes*, 312 Mich App 181, 197; 877 NW2d 752 (2015), citing *Lockridge*, 498 Mich at 393.

[50] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

[51] *Lockridge*, 498 Mich at 399.

[52] *Id*. at 391-392, 399.

[53] *People v Biddles*, 316 Mich App 148, 158; ___ NW2d ___ (2016).

## IV. JUDICIAL BIAS

Next, Harner argues that he was denied the right to a neutral and unbiased judge when the Honorable Arthur Cotter was allowed to preside over the majority of his lower court proceedings, including the preexam conferences, preliminary examinations, motion hearings, status conferences, jury trial, and sentencing. Harner also contends that defense counsel was ineffective for failing to object to this practice. We disagree.

A defendant raising a claim of judicial bias must preserve the issue for review by raising it in the trial court.[54] Because Harner failed to raise this issue below, it is unpreserved and our review is limited to plain error affecting substantial rights.[55] To establish that plain error affected substantial rights, "there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings."[56] Reversal is only warranted on the basis of plain error if the error "led to the conviction of an innocent defendant or seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ."[57] This Court's review of Harner's ineffective assistance of counsel claim is also limited to errors apparent from the record.[58]

In support of this claim of error, Harner cites the concurring opinion in Administrative Order No. 2004-2,[59] wherein Justice Markman expressed reservations with the Supreme Court's practice of approving local court reorganization plans without having addressed whether 2002 PA 678—the public act authorizing concurrent jurisdiction proposals—is "consistent with the constitution."[60] However, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."[61] Having failed to explain why he believes Berrien County's concurrent jurisdiction plan is somehow constitutionally infirm, Harner has abandoned appellate review of this argument.[62]

---

[54] *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

[55] *Id*.

[56] *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014) (citation omitted).

[57] *Id*. at 61-62 (citation and quotation marks omitted) (alteration in original).

[58] *Id*.

[59] Administrative Order No. 2004-2, 470 Mich lxiv (2004) (MARKMAN, J., concurring).

[60] AO 2004-2, 470 Mich at lxvi-lxviii.

[61] *Payne*, 285 Mich App at 195 (citation omitted).

[62] Moreover, the concerns raised by Justice Markman deal largely with the constitutionality of concurrent jurisdiction among the circuit court and probate court of a given county and are, therefore, inapplicable to Harner's cases. See AO 2004-2, 470 Mich at lxvi-lxvii n 2. Justice Markman also took care to note that his concerns should not be construed as an opinion that 2002 PA 678 was poorly advised or constitutionally infirm.

Harner also relies on *In re Murchison*[63] for the proposition that a judge conducting a " 'one-man grand jury' inquiry" will be disqualified from hearing any case or motion to quash arising from the inquiry. From this, Harner argues that Judge Cotter could not have been neutral to hear "the motion to quash the bind over, or any other district court dispositive rulings," presumably because he also presided over district court proceedings in Harner's cases. The record does not support Harner's argument. There is no indication that a "one-man grand jury" was convened in connection with Harner's cases, nor did Harner file any motions that required Judge Cotter to review decisions he rendered while acting as a district court judge before bind over. Furthermore, because Harner was tried by a jury, there is little risk that information Judge Cotter may have been exposed to during pretrial proceedings somehow affected the outcome of the trial.

In any event, Harner has failed to demonstrate that Judge Cotter's concurrent jurisdiction in these cases amounted to plain error. "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality."[64] "[M]erely proving that a judge conducted a prior proceeding against the same defendant does not amount to proof of bias for purposes of disqualification,"[65] and Harner has not pointed to any conduct on the part of Judge Cotter that would suggest bias.

Harner's related argument regarding defense counsel's failure to object to Judge Cotter's role in the proceedings must fail for similar reasons. Any objection to Judge Cotter's continued involvement in Harner's cases would have been meritless.[66] "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."[67]

## V. VALIDITY OF MCL 750.520A THROUGH MCL 750.520L

For his last claim of error, Harner argues that the enactment of 1974 PA 266, which was codified at MCL 750.520a through MCL 750.520*l*, was constitutionally invalid. Harner notes that unlike Michigan's 1908 Constitution, which provided for the "general revision of the statutes,"[68] Michigan's 1963 Constitution expressly states that "[n]o general revision of the laws shall be made."[69] Thus, according to Harner, the Legislature did not have the power to revise the Michigan Penal Code, MCL 750.1 *et seq.*, by creating a new class of "criminal sexual conduct" crimes. We disagree.

---

[63] *In re Murchison*, 349 US 133, 135; 75 S Ct 623; 99 L Ed 942 (1955).

[64] *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016) (citation omitted).

[65] *Id.* (citation omitted).

[66] *Id.* at 197.

[67] *Ericksen*, 288 Mich App at 201.

[68] Const 1908, art 5, § 40.

[69] Const 1963, art 4, § 36.

A party challenging the constitutionality of a statute must preserve the issue for review by raising it in the trial court.[70]  Because Harner raised this issue for the first time on appeal, it is unpreserved.  A defendant pressing an unpreserved claim of error must demonstrate a clear or obvious error that affected his or her substantial rights.[71]  To establish that plain error affected substantial rights, "there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings."[72]  Reversal is only warranted on the basis of plain error if the error "led to the conviction of an innocent defendant or seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ."[73]

"Statutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent."[74]  The burden of proving the invalidity of a statute is on the party challenging it.[75]  Harner's argument rests on the untenable proposition that our Legislature is constitutionally prohibited from altering the statutory law in existence at the time Michigan's Constitution was ratified in 1963.  This notion is incompatible with other constitutional provisions that contemplate the powers of the legislative branch,[76] as well as a long line of case law—developed both before and after 1963—addressing the Legislature's power to enact, amend, or repeal statutory law.[77]

Moreover, Harner's interpretation of the phrase "general revision" in Const 1963, art 4, § 36 is at odds with this Court's interpretation of that phrase as used in other constitutional

---

[70] *Vandenberg*, 307 Mich App at 61.

[71] *Id.*

[72] *Id.* (citation omitted).

[73] *Id.* at 61-62 (citation and quotation marks omitted) (alteration in original).

[74] *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001).

[75] *Vandenberg*, 307 Mich App at 62.

[76] See, e.g., Const 1963, art 4, § 25 ("No law shall be revised, altered or amended by reference to its title only"), § 27 (regarding effective date of legislative acts), and § 33 (establishing procedure for enacting bills passed by the Legislature).

[77] See, e.g., *Studier v Michigan Pub Sch Employees' Retirement Bd*, 472 Mich 642, 660; 698 NW2d 350 (2005) ("Of primary importance to the viability of our republican system of government is the ability of elected representatives to act on behalf of the people through the exercise of their power to enact, amend, or repeal legislation."); *People v Milton*, 393 Mich 234, 241; 224 NW2d 266 (1974) ("When passing new legislation, the Legislature is free either to enact an entirely new and independent act or amend any act to which the subject of the new legislation is germane, auxiliary or incidental." (Citation and quotation marks omitted.)); *Harsha v City of Detroit*, 261 Mich 586, 590; 246 NW 849 (1933) ("The legislative power is the authority to make, alter, amend, and repeal laws.").

provisions.  In *Citizens Protecting Michigan's Constitution v Secretary of State*,[78] this Court considered whether an initiative petition the plaintiffs sought to exclude from the 2008 general election ballot should be construed as a "general revision" of, or a proposed amendment to, the Constitution.  This Court said,

> "Revision" and "amendment" have the common characteristics of working changes in the charter and are sometimes used inexactly, but there is an essential difference between them.  Revision implies a re-examination of the whole law and a redraft without obligation to maintain the form, scheme, or structure of the old.  As applied to fundamental law, such as a constitution or charter, it suggests a convention to examine the whole subject and to prepare and submit a new instrument, whether the desired changes from the old be few or many.  Amendment implies continuance of the general plan and purport of the law, with corrections to accomplish its purpose.  Basically, revision suggests fundamental change, while amendment is a correction of detail.[79]

Here, 1974 PA 266 amended the Michigan Penal Code by adding MCL 750.520a through MCL 750.520*l* and repealing other statutes relating to criminal activity of a sexual nature.[80]  This amendment was not so far-reaching in the bigger context of the Michigan Penal Code, let alone the entire body of statutory law, that it can reasonably be construed as a reexamination of the whole law in violation of 1963 Const, art 4, § 36.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[78] *Citizens Protecting Mich's Constitution v Secretary of State*, 280 Mich App 273; 761 NW2d 210 (2008).

[79] *Id*. at 296, quoting *Kelly v Laing*, 259 Mich 212, 217; 242 NW 891 (1932).

[80] 1974 PA 266, title, enacting §§ 1, 3.